**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 12-12020 (MG) |
| RESIDENTIAL CAPITAL, LLC, <u>et al</u>., | Chapter 11 |
| Debtors. | Jointly Administered |
| RESCAP LIQUIDATING TRUST, | |
| Plaintiff, | Adv. Case No. 14-_____-mg |
| v. | |
| BANK OF AMERICA, N.A. AND FIRST REPUBLIC BANK, | **COMPLAINT** |
| Defendants. | |

Plaintiff Rescap Liquidating Trust (the "Trust" or "Plaintiff"), as successor to Residential Funding Company, LLC f/k/a Residential Funding Corporation ("RFC"), by and through its attorneys, alleges for its Complaint against defendants Bank of America, N.A. ("Bank of America") and First Republic Bank ("First Republic Bank" and, together with Bank of America, "Defendants") as successors to First Republic Thrift & Loan and First Republic Savings Bank ("Old First Republic"), as follows:

## NATURE OF ACTION

1.    This case arises in substantial part from the billions of dollars in liabilities and losses incurred by RFC as one of the Debtors in the above-captioned chapter 11 cases. Those liabilities and losses, in turn, arose from defective residential mortgage loans sold to RFC by mortgage loan sellers, including Old First Republic, who are legally and contractually

responsible for the liabilities and losses caused by the poor quality of the mortgage loans in question.

2.    RFC was, at times prior to its bankruptcy in May 2012, in the business of acquiring and securitizing residential mortgage loans.

3.    RFC's business model was built on acquiring loans from "correspondent lenders," such as Old First Republic, and distributing those loans by either pooling them together with other similar mortgage loans to sell into residential mortgage-backed securitization ("RMBS") trusts, or selling them to whole loan purchasers.

4.    Over the course of the parties' relationship, Old First Republic sold over 240 mortgage loans, with an original principal balance in excess of $165 million, to RFC.

5.    Critical to RFC's business success was the quality of the loans it purchased.  To that end, RFC required its correspondent lenders, including Old First Republic, to abide by stringent loan-level contractual representations and warranties designed to protect RFC from the risks of borrower fraud, appraisal fraud, failure to comply with state and federal law, and other credit and compliance factors that could negatively impact the performance and value of the loans it purchased.

6.    Over the course of RFC's business relationship with Old First Republic, RFC identified loans that contained material defects violating one or more of Old First Republic's contractual representations and warranties.  Defendant has not compensated RFC for all the liabilities and losses that RFC incurred due to Defendant's sale of defective loans to RFC.  The parties' Agreement entitles RFC to recovery of the liabilities and losses it incurred due to Old First Republic's breaches.

7.      Ultimately, due in significant part to the failure of correspondent lenders, including Old First Republic, to honor their contractual representations and warranties, RFC was sued by numerous counterparties and investors in its RMBS, based on allegations that the loans contained numerous defects and were rife with fraud and compliance problems.

8.      By the time RFC and the other above-captioned debtors (collectively, the "Debtors") filed their above-captioned bankruptcy cases in May 2012, RFC was facing over two dozen lawsuits around the country, all alleging that the loans RFC had securitized were defective, as well as claims by investors in hundreds of its RMBS seeking tens of billions of dollars in damages based on loan-level problems.

9.      During these cases, hundreds of proofs of claim were filed against RFC by dozens of claimants, including investors alleging securities fraud claims, class action plaintiffs, monoline insurers, RMBS holders and indenture trustees acting at their direction claiming breaches of representations and warranties, whole loan investors, and non-debtor co-defendants (such as underwriters of the RMBS offerings).  Collectively, these claims alleged tens of billions of dollars of damages stemming from defective loans, including those sold to RFC by Old First Republic.

10.     Following a lengthy and intensive mediation presided over by sitting bankruptcy judge James M. Peck, and related proceedings, RFC was able to resolve its RMBS-related liabilities for over $10 billion of allowed claims.  This agreed resolution of RFC's RMBS-related liabilities was set forth in a global settlement, which formed the cornerstone of a liquidating chapter 11 plan for RFC and its affiliated Debtors.  On December 11, 2013, after a five-day confirmation trial, this Court approved the global settlement, finding it to be fair and reasonable and in the best interests of each of the Debtors, and confirmed the *Second Amended Joint*

*Chapter 11 Plan Proposed by Residential Capital LLC, et al. and the Official Committee of Unsecured Creditors*, Case No. No. 12-12020 (MG) (Bankr. S.D.N.Y.) [D.I. 6065-1] (the "Plan").  Under paragraphs 24 and 48 of the *Order Confirming Second Amended Joint Chapter 11 Plan Proposed by Residential Capital, LLC et al. and the Official Committee of Unsecured Creditors*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) [D.I. 6065] and Article IV of the Plan, the Trust is responsible for monetizing many of the Debtors' remaining assets and pursuing litigation claims and distributing the proceeds to the Debtors' creditors, including RFC's rights against Old First Republic (and Bank of America and First Republic as its successors) and other parties who sold mortgages to RFC.

11.    Old First Republic, Bank of America and First Republic are contractually obligated to indemnify RFC for all liabilities and losses incurred by RFC as a result of breaches of Defendant's representations and warranties.

12.    Accordingly, the Trust brings this action for breach of contract, and for indemnification of all liabilities and losses RFC has incurred due to Defendant's breaches of its representations and warranties.

## PARTIES

13.    Plaintiff the Rescap Liquidating Trust is a Delaware Statutory Trust.  RFC is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota.  RFC was formerly known as Residential Funding Corporation.  When the above-captioned bankruptcy cases were commenced, RFC was a wholly owned subsidiary of GMAC-RFC Holding Company, LLC, a Delaware limited liability company.  GMAC-RFC Holding Company, LLC was a wholly owned subsidiary of Residential Capital, LLC, a Delaware limited liability company.  Residential Capital, LLC was a wholly owned subsidiary of GMAC

4

Mortgage Group LLC, a Delaware limited liability company, which in turn was a wholly owned subsidiary of Ally Financial, Inc., a Delaware corporation with its principal place of business in Michigan. Pursuant to the Plan, on December 17, 2013, GMAC-RFC Holding Company, LLC's interest in RFC was cancelled and the Trust succeeded to all of RFC's rights and interests under RFC's Agreement with Old First Republic.

14.   Defendant First Republic Bank is a bank, chartered, regulated, and supervised by the California Department of Business Oversight, with its principal place of business at 111 Pine Street, San Francisco, California, 94111.   Defendant Bank of America is a national bank supervised by the Office of the Comptroller of the Currency with a principal place of business at 100 North Tryon Street, Charlotte, North Carolina, 28202.   In 2007, Old First Republic merged into Merrill Lynch Bank & Trust Company, FSB. ("MLFSB").   MLFSB subsequently merged into Bank of America.   On June 30, 2010, First Republic Bank acquired many of Old First Republic Bank's assets and assumed many of its liabilities from Bank of America.

## JURISDICTION AND VENUE

15.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, in that the matter arises under title 11 or arises in or is related to the Debtors' bankruptcy proceedings. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000.   This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(O) in that it affects the liquidation of the assets of the estate.   The Trust hereby consents to the entry of final orders or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

16.     Venue is proper in this Court because these claims relate to the bankruptcy cases of the Debtors; the liquidation of these claims will impact the assets available to distribute to RFC's creditors under the Plan approved by the Bankruptcy Court; and litigating the case in the Bankruptcy Court is necessary to ensure the prompt administration of justice for all parties, including RFC's creditors.

## FACTUAL BACKGROUND

### The Agreement Between RFC and Old First Republic

17.     Over the course of the parties' relationship, Old First Republic sold over 240 mortgage loans to RFC pursuant to the Seller Contract attached as Exhibit A (the "Contract").

18.     The Contract incorporates into its terms and conditions the RFC Client Guide, exemplary excerpts of which are attached as Exhibit B-1 through B-15 (the "Client Guide"). (The complete versions of the Client Guide are known to the parties and too voluminous to attach in their entirety; the omitted portions of the Client Guides do not affect the obligations set forth in this Amended Complaint.)  The Contract and Client Guide collectively form the parties' Agreement, and set the standards to which Old First Republic's loans sold to RFC were expected to adhere.

19.     A preliminary list of the loans sold by Old First Republic to RFC pursuant to the Agreement, and subsequently securitized by RFC, is attached hereto as Exhibit C.  The original principal balance of these loans exceeds $165 million.

20.     As a correspondent lender, Old First Republic had the initial responsibility for collecting information from the borrower, verifying its accuracy, and underwriting the loan.  Old First Republic had primary responsibility for all aspects of the underwriting of the loan, and it was understood between the parties that RFC would generally *not* be re-underwriting the loan.  It

was Old First Republic, or others from whom Old First Republic purchased mortgages, that actually closed the loans with the borrowers.

21.    As Old First Republic was well aware, once the loans were sold to RFC, RFC pooled groups of loans with similar characteristics, and the pool of loans would be sold into a special-purpose securitization Trust.  The pool of loans formed the collateral underlying the Trust's mortgage-backed securities, which were in turn sold to investors.

22.    As Old First Republic was also well aware, RFC from time to time sold pools of loans to whole loan investors.

23.    Old First Republic knew of RFC's intention to securitize and/or sell the loans. Specifically, Old First Republic acknowledged, in the Client Guide, that it "recognize[d] that it is [RFC's] intent to securitize some or all of the Loans sold to [RFC]," and agreed to provide RFC with "all such information … as may be reasonably requested by [RFC] for inclusion in a prospectus or private placement memorandum published in connection with such securitization," including all information necessary to comply with the disclosures required by Regulation AB (governing asset-backed securities) and other applicable federal securities laws.  (See Client Guide at A202(II); 206(D).)

24.    Pursuant to the Agreement, Old First Republic made a number of representations and warranties with respect to the loans, including, but not limited to, the following:

    a.  Defendant's "origination and servicing of the Loans have been legal, proper, prudent and customary and have conformed to the highest standards of the residential mortgage origination and servicing business."  (Client Guide A201(K).)

    b.  Defendant "will comply with all provisions of this Client Guide and the Program Documents, and will promptly notify GMAC-RFC of any occurrence, act, or omission regarding [Defendant], the Loan, the Mortgaged Property or the Mortgagor of which [Defendant] has knowledge, which … may materially affect [Defendant], the Loan, the Mortgaged Property or the Mortgagor." (Client Guide A201(M).)

7

c. "All information relating to each Loan delivered and sold to GMAC-RFC is true, complete and accurate and there are no omissions of material facts. All data provided by the Client to GMAC-RFC relating to any Loan, whether in electronic format, or otherwise, is true and complete and accurately reflects the information in the related Loan file." (Client Guide A202(A).)

d. "All Loan Documents, Funding Documents and Final Documents are genuine, have been completed, duly and properly executed, are in recordable form and delivered in the form and manner specified in this Client Guide," and "[a]ll originals and copies of such documents and all other documents, materials, and other information required to be submitted to GMAC-RFC have been so submitted, and are complete and accurate." (Client Guide A202(D).)

e. "All Loan Documents, Funding Documents and Final Documents and all other documents describing or otherwise relating thereto are in compliance with all local and State laws, regulations and orders." (Client Guide A202(D).)

f. "There is no default, breach, violation or event of acceleration existing under any Note or Security Instrument transferred to GMAC-RFC, and no event exists which, with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and no such default, breach, violation or event of acceleration has been waived by [Defendant] or any other entity involved in originating or servicing the Loan." (Client Guide A202(G).)

g. "[E]ach Loan has been originated, closed, and transferred in compliance with all applicable local, State and federal laws and regulations, including, but not limited to, the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth-in-Lending Act, the Fair Housing Act, and the National Flood Insurance Act. This warranty is made by [Defendant] with respect to each GMAC-RFC Loan Application taken and processed for each Loan and with respect to each Loan made by the [Defendant] or any other entity." (Client Guide A202(I).)

h. "No Loan is a … loan considered a 'high-cost,' covered, 'high-risk,' 'predatory' or any other similar designation under any State or local law in effect at the time of the closing of the loan if the law imposes greater restrictions or additional legal liability for residential mortgage loans with high interest rates, points and/or fees." (Client Guide A202(J)(1)(d).)

i. "[N]o circumstances exist involving the Loan Documents, the Mortgaged Premises or the Borrower's credit standing that could: (i) cause private institutional investors to regard the Loan as an unacceptable investment, (ii) cause the Loan to become delinquent, or (iii) adversely affect the Value or marketability of the Mortgaged Premises or the Loan." (Client Guide A202(Q).)

8

j. "The Loan is of investment quality, has been prudently originated and has been underwritten in compliance with all requirements of this Client Guide." (Client Guide A202(T).)

k. "For each Loan for which an appraisal is required or obtained under this Client Guide, the appraisal was made by an appraiser who meets the minimum qualifications for appraisers as specified in this Client Guide." (Client Guide A202(T).)

l. "For each Loan, as of the Funding Date, the market Value of the Mortgaged Premises is at least equal to the appraised value stated on the Loan appraisal, or if an Automated Valuation Model (AVM) is permitted, the Value on the AVM, except to the extent that the market Value of the Mortgaged Premises is lower … due to the effect of any toxic materials or other environmental hazards of which neither the appraiser nor the [Defendant] has actual knowledge of reasonable grounds to suspect." (Client Guide A202(T).)

m. "No fraud or misrepresentation by the Borrower or by the [Defendant], broker, correspondent, appraiser or any independent contractor retained by the [Defendant], broker, correspondent, appraiser or any employee of any of the foregoing occurred with respect to or in connection with the origination or underwriting of any Loan and all information and documents provided to GMAC-RFC in connection with the Loan are complete and accurate." (Client Guide A202(KK).)

25.     These representations and warranties were material terms in RFC's agreement to acquire the mortgage loans from Old First Republic.  Old First Republic's contractual warranty of the quality of the loans was important because RFC in turn sold these loans to RMBS trusts and whole loan purchasers, making its own representations and warranties to the trusts and investors.  If any of Old First Republic's representations and warranties turned out to be false, RFC could have exposure to these third parties, and thus RFC required contractual protection from Old First Republic under which RFC would have recourse for its liabilities and losses on account of defective loans.

26.     Pursuant to the Client Guide, Old First Republic's failure to comply with its representations and warranties or <u>any</u> of the other requirements, terms or conditions of the Client

Guide constitutes an "Event of Default," as does its failure to provide RFC with true, accurate and complete information in a timely manner.  (See Client Guide A208.)

27.    Similarly, it is an "Event of Default" if a "[b]orrower or any other person or entity involved in the loan transaction or its underwriting or documentation (including any appraiser, broker, third-party originator, credit reporting agency, or other provider of underwriting information) has made any false representation and/or has failed to provide information that is true, complete and accurate in connection with" the loan transaction, regardless of whether Old First Republic knew of the misrepresentation or incorrect information.  (See Client Guide A208.)

28.    Old First Republic expressly agreed that RFC was permitted to exercise any remedy "allowed by law or in equity" in connection with such Events of Default.    (See Client Guide A209.)   Moreover, the Client Guide specified that RFC's exercise of one or more remedies in connection with a particular Event of Default "will not prevent it from exercising … [o]ne or more other remedies in connection with the same Event of Default," or "[a]ny other rights which it may have at law or in equity."  (Id.)  RFC's remedies expressly survived the sale of the loans and the termination of the ongoing business relationship between RFC and Old First Republic.  (Id. at A209(C).)

29.    The Client Guide further specified the remedies available to RFC in case of an Event of Default, including a breach of any loan-level representation or warranty.  The available remedies included, but were expressly not limited to, repurchase of the defective loan, substitution of another loan for the defective one, or indemnification against liabilities resulting from such breaches.  (See Client Guide A210.)  The Client Guide expressly stated that RFC was "not required to demand repurchase within any particular period of time, and may elect not to require immediate repurchase."  (Id.)  Further indemnification remedies are set forth in Sections

A202 and A212 of the Client Guide. Section A209 of the Client Guide, in turn, makes clear that all of these remedies are non-exclusive and cumulative.

30.    Moreover, RFC alone retained the sole discretion to declare an Event of Default, and to choose what remedy or remedies to pursue. Nothing in the Agreement required RFC to provide Old First Republic with notice and an opportunity to cure the defects, to make a repurchase demand, or in any way restricted RFC from pursuing recovery for materially defective loans at any time. In fact, the United States Court of Appeals for the Eighth Circuit recently confirmed that, under the Client Guide, RFC has the sole discretion to declare an Event of Default, and correspondent lenders such as Old First Republic have contractually bargained away any right to challenge RFC's determination regarding such an Event of Default. See Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910 (8th Cir. 2013).

31.    The repurchase provision required Old First Republic to compensate RFC for defective loans according to a formula specified in the Client Guide that is based on the original principal balance of the loan. If RFC determined that repurchase was not appropriate, Old First Republic would nonetheless contractually be obligated to pay RFC "all losses, costs and expenses incurred by [RFC] and/or the loan's servicer as a result of an Event of Default," including "all reasonable attorneys' fees and other costs and expenses incurred in connection with enforcement efforts undertaken." (See Client Guide A210.)

32.    Under the terms of the Agreement, Old First Republic is obligated to repurchase loans and/or pay RFC the repurchase price even if the loan has already been foreclosed upon. (See Client Guide A210(B).)

33.    Old First Republic also expressly agreed to broad indemnification provisions, including the following:

> [Defendant] shall indemnify GMAC-RFC from all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses … includ[ing], without limitation, liabilities arising from (i) any act or failure to act, (ii) any breach of warranty, obligation or representation contained in the Client Guide, (iii) any claim, demand, defense or assertion against or involving GMAC-RFC based on or resulting from such breach, (iv) any breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon any warranty, obligation or representation made by [Defendant] contained by the Client Contract and (v) any untrue statement of a material fact, omission to state a material fact, or false or misleading information provided by the [Defendant] in information required under Regulation AB or any successor regulation.
>
> In addition, [Defendant] shall indemnify GMAC-RFC against any and all losses, damages, penalties, fines, forfeitures, judgments, and any other costs, fees and expenses (including court costs and reasonable attorneys' fees) incurred by GMAC-RFC in connection with any litigation or governmental proceeding that alleges any violation of local, State or federal law by [Defendant], or any of its agents, or any originator or broker in connection with the origination or servicing of a Loan.

(Client Guide A212.)  Old First Republic further agreed:

> to indemnify and hold GMAC-RFC harmless from and against any loss, damage, penalty, fine, forfeiture, court cost, reasonable attorneys' fees, judgment, cost, fee, expense or liability incurred by GMAC-RFC as a result of any material misstatement in or omission from any information provided by [Defendant] to GMAC-RFC; or from any claim, demand, defense or assertion against or involving GMAC-RFC based on or grounded upon, or resulting from such misstatement or omission or a breach of any representation, warranty or obligation made by GMAC-RFC in reliance upon such misstatement or omission.

(Client Guide A202.)  The Client Guide also entitles RFC to recover all court costs, attorney's fees and any other costs, fees and expenses incurred by RFC in enforcing the Agreement or Client Guide.

34.    RFC at all times performed all of its obligations to Old First Republic, if any, under the Agreement, and all conditions precedent to the relief sought in this action, if any, have been satisfied.

**Defendant Materially Breached Numerous Loan-Level Representations and Warranties.**

35.     As noted above, the loans RFC acquired from Old First Republic and other correspondent lenders were sold, either into RMBS trusts that issued certificates to outside investors, or in "whole loan" portfolios to other mortgage companies and banks.

36.     The loans Old First Republic sold RFC were eventually deposited in some 65 RMBS Trusts.  When RFC sold the loans, it passed on a more limited set of representations and warranties to the Trusts, and, as required by SEC regulations, disclosed pertinent information about the loans to investors in the RMBS.  In making those representations and warranties, RFC relied on information provided to it by Old First Republic and other correspondent lenders.  That information in many cases violated Old First Republic's representations and warranties to RFC.

37.     Old First Republic materially breached its extensive contractual representations and warranties by delivering loans that were not originated or underwritten in accordance with the requirements of the Agreement; did not meet the representations and warranties made as to those loans; and/or failed to comply with applicable state and federal law.

38.     Over time, loans sold to RFC by Old First Republic defaulted or became seriously delinquent.  This exposed RFC to claims from investors, monoline insurers, and others.

39.     These delinquency and default rates exceed what would normally be expected in a given population of mortgage loans.

40.     Internal reviews conducted by RFC determined that numerous loans sold to RFC by Old First Republic violated the Client Guide and/or other representations or warranties made by Old First Republic, resulting in an Event of Default under the Agreement.

41.     The types of defects varied, but included income misrepresentation, employment misrepresentation, insufficient credit scores, owner occupancy misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents,

among others.  Additional material defects are likely contained throughout the loan population sold to RFC by Old First Republic.

42.    By way of example, all of the above significant and material defects violating the Client Guide representations and warranties are illustrated by Loan ID # 7182304 sold to RFC by Old First Republic.  First, one of the borrowers on this $775,000 loan was a real estate broker who represented that her employer was Sotheby's International Realty.  However, when RFC's internal audit personnel contacted the human resources department at Sotheby's, the human resources manager stated there was no record that the borrower was ever employed there. Second, the underwriter improperly calculated the borrower's income; the borrower's sales figures did not support the income used to qualify the borrower for the loan.  Third, the income used to qualify the co-borrower was based on deferred compensation as a result of the co-borrower's retirement, but there was no documentation in the loan file that any disbursements had been scheduled.  Fourth, the underwriter for Defendant failed to account for multiple credit card accounts in the name of the borrower(s) in calculating the borrower's debt-to-income ratio (DTI), which would have raised the DTI to an impermissible level.  Fifth, RFC confirmed the borrower already owned a home, which was only 0.8 miles, or less than one minute, from the borrower's workplace.  The property collateralizing the loan, however, was a 47-minute commute from the borrower's workplace.  Based on this information, RFC's internal audit personnel found that the subject property was a second home.  This was a material violation of RFC's underwriting requirement that the borrower must reside primarily at the subject property in order to be approved for the loan.  Sixth, the appraisal for the subject property was inaccurate in that it was based on property values that were not comparable to the subject property.  Finally, the loan application was incomplete, the credit file was missing the initial application, the title

commitment and complete asset statements for two consecutive months were not provided, and the hazard insurance policy did not have the address for the subject property as the mailing address.    All of these defects were significant and material violations of Defendant's representations and warranties to RFC.

43.    The above-described loan represents several types of material defects in the loans Old First Republic sold to RFC.    Other loans sold to RFC by Old First Republic contained material defects that violated the representations and warranties Old First Republic made in the Agreement.    Old First Republic has in no way fully compensated RFC for the breaches of representations and warranties, liabilities, or losses stemming from the universe of defective loans Old First Republic sold to RFC over time.

44.    As detailed below, these defects constituted material breaches of Defendant's representations and warranties, contributing to RFC's exposure to billions of dollars in liability and tens of millions of dollars in legal expenses.

**RFC's Liabilities and Losses Stemming from Defendant's Breaches.**

45.    As a direct result of Old First Republic's breaches, RFC has incurred obligations, liabilities, damages, and losses for which it is entitled to recovery from Old First Republic, Bank of America and First Republic.

46.    First, RFC has incurred billions of dollars in liabilities and losses stemming from defective loans, including those sold to RFC by Old First Republic.

47.    In addition, RFC has expended tens of millions of dollars litigating the quality of the loans sold to it by Old First Republic and others in extensive federal and state court litigation in which plaintiffs claimed the loans were rife with borrower or originator fraud, or failed to comply with applicable state and/or federal law.

48.    Beginning in 2008 and continuing until RFC filed for bankruptcy protection with this Court on May 14, 2012, RFC faced a growing number of claims and dozens of lawsuits stemming from the defective loans sold to it by Old First Republic and others.

49.    For example, the RFC-sponsored RMBS offerings containing loans sold to RFC by Old First Republic included a number of RMBS that became the subject of more than a dozen lawsuits brought by investors and other participants in the securitizations, alleging that as many as 98% of the loans contained in the RMBS offerings were defective in one or more ways.

50.    RFC ordinarily received a limited number of repurchase demands, primarily from whole loan investors.

51.    However, in early 2008, MBIA Insurance Corp., a bond insurer that issued insurance policies guaranteeing the performance of certain mortgage-backed securities issued by RFC, began questioning the quality of large numbers of loans in the securitizations it had insured.

52.    MBIA hired a team to begin reviewing loan files, and in May 2008, based on the *less-stringent* representations and warranties RFC had made to MBIA, demanded that RFC repurchase many allegedly defective loans.  A few loans subject to these repurchase requests were loans Old First Republic sold to RFC and RFC pooled in the securitization trusts for which MBIA issued financial guaranty insurance policies.

53.    Although RFC aggressively defended the claims made by MBIA wherever possible, RFC ultimately acknowledged that, even on the basis of representations and warranties that were less stringent than those Old First Republic made to RFC, RFC was obligated to repurchase at least 24% of the loans MBIA claimed were defective.

54.    MBIA continued its review and continued to find many defective loans, ultimately resulting in protracted and costly litigation, as described below.

55.    In 2012, Deutsche Bank, a Trustee of numerous RMBS issued by RFC, for the first time made a repurchase demand to RFC.  Deutsche likewise alleged that the loans were defective in numerous ways.  Deutsche Bank likewise included Old First Republic loans in its repurchase demand.  Other purchasers or investors in loans Old First Republic sold to RFC and RFC sold to those purchasers or investors also identified defects in the Old First Republic loans and demanded that RFC repurchase them.  Among these entities was Beal, which forced RFC to repurchase Loan ID # 9755275, with an original principal balance of $1 million.  On June 26, 2009, RFC wired $856,351.03 to Beal to meet Beal's repurchase demand just as to this single loan.

56.    Beginning in October 2008, RFC was sued in literally dozens of lawsuits stemming from allegedly defective mortgage loans, including those sold to it by Old First Republic.

57.    The first of these lawsuits was filed by bond insurer MBIA in October 2008.  The MBIA lawsuit covered five RFC second-lien securitizations that included thousands of mortgage loans.  For the first time, RFC learned that MBIA's analysis had concluded that over 80% of the loans in the pools it insured were defective.

58.    The MBIA lawsuit specifically attacked RFC's RMBS offerings 2006-HSA4, 2006-HSA5, and 2007-HSA1, HSA2 and HSA3.  As shown in Exhibit C, offerings 2007-HSA2 and 2007-HSA3 included Old First Republic loans.

59.    Indeed, as part of the MBIA litigation, MBIA hired an expert to review again a sampling of loans across the five securitizations involved in the *MBIA v. Residential Funding*

*Company, LLC* case. Of the single Old First Republic loan reviewed, Loan ID # 11404553, which was part of securitization 2007-HSA3 and had an original principal balance of $61,500, MBIA's expert found two defects that materially breached the weaker representations that RFC had provided to MBIA. As to this loan, MBIA's expert found that the appraisal in the loan file did not satisfy the requirements of the Program Guide and the borrower's housing history (pay history of prior mortgage or rental history) required by the Program Guide was missing from the loan file.

60.    The MBIA lawsuit was followed shortly by a class action suit filed by the New Jersey Carpenters pension funds.

61.    The New Jersey Carpenters' lawsuit purported to cover 59 mortgage-backed securities offerings issued through RFC's RALI shelf in 2006 and 2007, which consisted of first-lien Alt-A loans. These securitizations were identified by names that included the letters "QA," "QH," "QO," and "QS." As shown in Exhibit C, several Old First Republic loans were included in the offerings that were the subject of the New Jersey Carpenters' lawsuit.

62.    The New Jersey Carpenters' complaint alleged that 38% of the mortgage loans underlying the securitizations were in delinquency, default, foreclosure or repossession when New Jersey Carpenters filed its class action complaint, and that much of RFC's mortgage loan data "was inaccurate due to the inflated appraisal values, inaccurate LTV ratios, borrower income inflation, and the other facets of defective underwriting" described throughout the Complaint. (NJ Carpenters First Am. Compl. ¶¶ 9, 110 in *New Jersey Carpenters et al. v. Residential Capital, LLC et al.* Case No. 08-cv-08781 (HB) (S.D.N.Y.).) Of course, that data was provided to RFC—and represented and warranted to be accurate—by Old First Republic and other correspondent lenders.

63.    On February 18, 2011, the Allstate Insurance Company and its various subsidiaries and affiliates sued RFC and numerous other defendants in Hennepin County District Court, Minnesota.  Allstate sued RFC about its role in some 23 securitizations, 7 of which (2005-S8, 2005-HS1, 2005-HS2, 2005-HSA1, 2006-S6, 2007-HSA2, and 2007-HSA3) included a number of loans sold to RFC by Defendant.  Allstate supported its allegations in this complaint with a loan-level review of over 30,000 loans.  For each of the 7 securitizations Old First Republic sold loans into, Allstate reviewed a sample of 800 defaulted loans and 800 loans tested at random, unless a particular securitization contained less than 800 loans – in which case Allstate reviewed all of the loans in that securitization.  Allstate alleged that its review of these loans showed significant misstatements concerning borrower income, owner-occupancy, and loan-to-value ratios, all of which under the Client Guide Defendant was responsible for reviewing.

64.    Numerous other lawsuits followed on through RFC's bankruptcy filing in May 2012, including over fifteen lawsuits brought by private investors in its RMBS securities, and more than a dozen lawsuits brought by monoline insurers.

65.    All of these lawsuits alleged that the loans RFC sold into RMBS securitizations were defective in a variety of ways, including because of borrower fraud, missing or inaccurate documentation, fraudulent or inflated appraisals, misrepresentations concerning owner-occupancy, or failure to comply with applicable state and federal law.

66.    Collectively, these lawsuits involved more than one hundred RMBS securitizations, and a combined original principal balance of more than $100 billion.

67.    Across the dozens of securitizations involved in these lawsuits, Old First Republic was responsible for over 45 of the loans.

68.     As of May 2012, RFC had already repurchased millions of dollars worth of defective loans from its RMBS securitizations and from whole loan purchasers, either at the request of a bond insurer or trustee, or because RFC itself discovered a defect and affirmatively took steps to repurchase the loan.  As described in more detail above, these included loans sold to RFC by Old First Republic.

**Old First Republic's Business Changes Hands Multiple Times**

69.     On September 21, 2007, Old First Republic merged into MLFSB.  *See* Merrill Lynch 2007-10k at 23.[1]  On January 1, 2009, MLFSB's parent company, ML & Co. merged with a subsidiary of Bank of America.

70.     On October 21, 2009, Bank of America and MLFSB entered into a purchase and sale agreement with First Republic.  First Republic was managed by Old First Republic's management team, which continued to run Old First Republic's business after it was merged into MLFSB.  On November 2, 2009, MLFSB merged into Bank of America.  *See* First Republic Offering Circular dated December 8, 2010 at ii (Excerpt attached hereto as Exhibit D.)[2]

71.     First Republic has publicly stated "[w]e agreed to purchase certain assets and operations, including the customer relationships, trust department and most of the loans held by, and assume most of the other liabilities of, the First Republic division of MLFSB . . . "  *Id.* at 5.  This transaction closed after the close of business on June 30, 2010.  *Id.* at 6.  First Republic and Bank of America have not disclosed publicly the purchase and sale agreement or which of Old First Republic's liabilities First Republic assumed.  Upon information and belief, First Republic may have assumed some or all of the liabilities to RFC alleged in this suit.

---

[1]  Copy available at http://www.sec.gov/Archives/edgar/data/65100/000095012308002050/y46644e10vk.htm (last checked 5/13/14).

[2]  Copy Available at http://ir.firstrepublic.com/phoenix.zhtml?c=105639&p=irol-reportsotherAll (last checked 5/13/14).

**The Debtors' Bankruptcy Cases**

72.     In May 2012, RFC and certain of its affiliates—partly because of the enormous exposure stemming from the pending mortgage-related lawsuits described above—filed for Chapter 11 bankruptcy protection in this Court.

73.     In connection with the bankruptcy proceeding, hundreds of proofs of claim were filed by investors in RMBS, monoline insurers, whole loan purchasers, indenture trustees, and an array of co-defendants in the above-described loan-related litigation.   These proofs of claim, many of which mirrored the litigation filed prior to the bankruptcy, sought damages in the tens of billions of dollars, all stemming from allegedly defective mortgage loans, including those sold to RFC by Old First Republic.   By way of example, the following represents a small sampling of the hundreds of proofs of claim filed on the basis of defective loans:

    a.   The indenture trustees for each of the RFC-sponsored securitizations (Deutsche Bank, Bank of New York, U.S. Bank, HSBC Bank, Law Trust and Wells Fargo, and Wells Fargo) collectively filed more than two dozen proofs of claim at the direction of two substantial groups of institutional investors. The institutional investors collectively asserted that loan-level defects (including in the loans sold to RFC by Old First Republic and securitized) were responsible for more than $19.5 billion in repurchase obligations.

    b.   Allstate, an investor in 25 Debtor-sponsored securitizations (a number of which included First Republic loans), filed 20 proofs of claim based on the allegation that the loans were defective.   The proofs of claim were based in part on analyses of the individual loan-level data for these loans.

    c.   John Hancock, an investor in over 50 Debtor-sponsored securitizations (a number of which included Old First Republic loans), filed 43 proofs of claim asserting similar allegations.

    d.   MBIA, a monoline insurer that issued financial guaranty insurance on a number of RFC-sponsored securitizations that included Old First Republic loans, filed six proofs of claim seeking approximately $2.2 billion in damages based on alleged defects contained in the loans, a number of which (as described above) MBIA had individually reviewed.

    e.   FGIC, a monoline insurer that issued financial guaranty insurance on a number of RFC-sponsored securitizations that included Old First Republic

loans, filed three proofs of claim seeking approximately $1.85 billion in damages based on alleged defects contained in the loans, a number of which FGIC had individually reviewed.

74.     Many whole loan purchasers also filed proofs of claim in the bankruptcy proceedings, collectively seeking millions of dollars in recovery.

75.     These proofs of claim, lawsuits, and demands all alleged, among other things, that the securitized or purchased loans were defective, improperly underwritten, and breached representations and warranties made by RFC to investors, purchasers, and other contractual parties.  Those representations and warranties were, in most cases, identical to or less stringent than those that RFC had received from Old First Republic, and on which RFC had relied.

76.     The Debtors initially proposed to settle portions of their RMBS-related liabilities for an aggregate $8.7 billion allowed claim in the bankruptcy case.  Subsequently, after protracted litigation over the reasonableness and propriety of that settlement, this Court appointed the Hon. James M. Peck, a United States Bankruptcy Judge for the Southern District of New York, to serve as a mediator and to attempt to achieve a negotiated resolution of the Debtors' RMBS-related liabilities and of other disputed issues in the chapter 11 cases.  A lengthy mediation process ensued, which, together with related proceedings, resulted in a global settlement that, among other things, provided for the resolution of all of the Debtors' RMBS-related liabilities for more than $10 billion in allowed claims granted to the various RMBS trusts, monoline insurers, FHFA, securities law claimants, and others.

77.     This Court ultimately approved the global settlement, including the $10 billion-plus settlement of RMBS-related liabilities, finding it to be fair and reasonable and in the best interests of each of the Debtors, and confirmed the plan.  (See Case No. 12-12020-mg, Doc. 6066 (Findings of Fact), at ¶¶ 98 to 176.)  The Plan became effective on December 17, 2013.

Pursuant to the Plan, the Trust succeeded to all of RFC's rights and interests, including its right to bring litigation claims against Old First Republic.

78.     Pursuant to its express contractual obligations, Old First Republic is obligated to compensate the Trust (as successor to RFC under the Plan) for the portion of global settlement associated with its breaches of representations and warranties, as well as for the portion of RFC's other liabilities and losses (including the tens of millions of dollars that RFC has paid in attorneys' fees to defend against, negotiate, and ultimately settle claims relating to allegedly defective loans) associated with those breaches.    Bank of America and/or First Republic are liable as successor(s) for Old First Republic's obligations to the Trust.

## COUNT ONE
## (BREACH OF CONTRACT)

79.     The Trust realleges each and every allegation set forth in Paragraphs 1 through 78, above, as if fully rewritten herein.

80.     RFC and Old First Republic Bank entered into a valid and enforceable Agreement pursuant to which RFC acquired over 240 mortgage loans from  Old First Republic Bank.

81.     Pursuant to the parties' Agreement, Old First Republic Bank made representations and warranties to RFC regarding the quality and characteristics of the mortgage loans Defendant sold to RFC.

82.     RFC complied with all conditions precedent, if any, and all of its obligations under the Agreement.

83.     Old First Republic materially breached its representations and warranties to RFC inasmuch as the mortgage loans materially did not comply with the representations and warranties.

23

84.     Old First Republic's material breaches constituted Events of Default under the Agreement.

85.     RFC has suffered loss, harm and financial exposure directly attributable to Old First Republic's material breaches, including liabilities and losses stemming from the defective loans, as well as attorneys' fees, litigation-related expenses, and other costs associated with both defending dozens of lawsuits and proofs of claim filed against RFC stemming in part from materially defective loans sold to RFC by Old First Republic, and fees and costs incurred in prosecuting this action.

86.     Bank of America succeeded to Old First Republic's liabilities under the Agreement when it merged with MLFSB.  Either Bank of America continues to be responsible for these liabilities and/or First Republic assumed them when it purchased Old First Republic's business operations on June 30, 2010.

87.     Accordingly, the Trust is entitled to compensation in an amount to be proven at trial, together with an award of attorneys' fees, interest, and costs.

## COUNT TWO
## (INDEMNIFICATION)

88.     The Trust realleges each and every allegation set forth in Paragraphs 1 through 87, above, as if fully rewritten herein.

89.     RFC has incurred substantial liabilities, losses and damages arising from and relating to material defects in the mortgage loans Old First Republic Bank sold to RFC, including over $10 billion in allowed claims approved by this Court, as well as tens of millions of dollars in attorneys' fees, litigation-related expenses, and other costs associated with defending dozens of lawsuits and proofs of claim filed against RFC stemming in part from materially defective loans sold to RFC by Old First Republic Bank.

90.     Old First Republic Bank expressly agreed to indemnify RFC for the liabilities, losses and damages, including attorneys' fees and costs, which RFC has incurred.

91.     Bank of America succeeded to Old First Republic's liabilities under the Agreement when it merged with MLFSB.  Either Bank of America continues to be responsible for these liabilities and/or First Republic assumed them when it purchased Old First Republic's business operations on June 30, 2010.

92.     Accordingly, the Trust is entitled to indemnification in an amount to be proven at trial, and an award of attorneys' fees, interest, and costs.

WHEREFORE, the Trust demands judgment in its favor and against Defendants as follows:

(A)     On Count One (Breach of Contract), contractual repurchase compensation and/or damages in excess of $75,000 and in an amount to be proven at trial, and an award of attorneys' fees, interest, and costs; and

(B)     On Count Two (Indemnification), a declaratory judgment that one or both of Defendants is responsible to indemnify the Trust against liabilities, losses, expenses and/or other damages paid or to be paid in settlements or otherwise stemming from Old First Republic's conduct, an order for damages sufficient to reimburse the Trust for RFC's liabilities, losses, costs and expenses caused by Old First Republic's actions in an amount in excess of $75,000 and in an amount to be proven at trial, and an award of attorneys' fees, interest, and costs; and

(C)     All such further relief, as the Court deems necessary or proper.

Dated:  May 13, 2014

By: /s/ Peter E. Calamari
       Peter E. Calamari
       Isaac Nesser
       Alex Rossmiller
       John Sullivan
       QUINN EMANUEL URQUHART & SULLIVAN, LLP
       51 Madison Avenue, 22nd Floor
       New York, New York  10010
       Telephone:  (212) 849-7000
       Facsimile:  (212) 849-7100
       PeterCalamari@quinnemanuel.com
       IsaacNesser@quinnemanuel.com
       AlexRossmiller@quinnemanuel.com
       JohnSullivan@quinnemanuel.com

       COUNSEL TO RESCAP LIQUIDATING TRUST