1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 12-12020-mortgage

Adversary Case Nos.: Listed on pages 2 to 4

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

RESIDENTIAL CAPITAL, LLC, et al.,

                Debtors.

- - - - - - - - - - - - - - - - - - - -x

                United States Bankruptcy Court

                One Bowling Green

                New York, New York

                July 15, 2014

                2:09 PM

B E F O R E:

HON. MARTIN GLENN

U.S. BANKRUPTCY JUDGE

1

2   Adversary proceeding: 14-01915-mg   Residential Funding

3   Company, LLC v. HSBC MORTGAGE CORPORATION (USA)

4   Case Management Conference

5

6   Adversary proceeding: 14-01916-mg Residential Funding Company,

7   L.L.C. v. Greenpoint Mortgage Funding, Inc.

8   Case Management Conference

9

10   Adversary proceeding: 14-01926-mg Residential Funding Company,

11   L.L.C. v. UBS Real Estate Securities, Inc.

12   Case Management Conference

13

14   Adversary proceeding: 14-01995-mg Rescap Liquidating Trust v.

15   RBC Mortgage Company

16   Case Management Conference

17

18   Adversary proceeding: 14-01996-mg Rescap Liquidating Trust v.

19   Summit Financial Mortgage LLC et al

20   Case Management Conference

21

22   Adversary proceeding: 14-01998-mg Rescap Liquidating Trust v.

23   CMG Mortgage, Inc.

24   Case Management Conference

25

1

2   Adversary proceeding: 14-01999-mg Rescap Liquidating Trust v.

3   Primary Capital Advisors LLC

4   Case Management Conference

5

6   Adversary proceeding: 14-02000-mg Rescap Liquidating Trust v.

7   Honor Bank

8   Case Management Conference

9

10  Adversary proceeding: 14-02001-mg Rescap Liquidating Trust v.

11  Cadence Bank, N.A.

12  Case Management Conference

13

14  Adversary proceeding: 14-02002-mg Rescap Liquidating Trust v.

15  Citizens First Wholesale Mortgage Co.

16  Case Management Conference

17

18  Adversary proceeding: 14-02003-mg Rescap Liquidating Trust v.

19  First Mariner Bank

20  Case Management Conference

21

22  Adversary proceeding: 14-02004-mg Rescap Liquidating Trust v.

23  Mortgage Investors Group, Inc.

24  Case Management Conference

25

**4**

1

2   Adversary proceeding: 14-02005-mg Rescap Liquidating Trust v.

3   Synovus Mortgage Corp.

4   Case Management Conference

5

6   Adversary proceeding: 14-02008-mg Rescap Liquidating Trust v.

7   PHH Mortgage Corp.

8   Case Management Conference

9

10  Adversary proceeding: 14-02009-mg Rescap Liquidating Trust v.

11  Bank of America, N.A. et al

12  Case Management Conference

13

14

15

16

17

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  700 West 192nd Street, Suite #607

23  New York, NY 10040

24  (973)406-2250

25  operations@escribers.net

1

2  A P P E A R A N C E S :

3  BUCKLEY SANDLER LLP

4         Attorneys for RBC Mortgage Company

5         1133 Avenue of the Americas

6         Suite 3100

7         New York, NY 10036

8

9  BY:   MATTHEW P. PREVIN, ESQ.

10

11

12  PRYOR CASHMAN LLP

13         Attorneys for Primary Capital Mortgage and

14         Synovus Mortgage Corporation

15         7 Times Square

16         New York, NY 10036

17

18  BY:   RICHARD LEVY, JR., ESQ.

19

20

21  MILES & STOCKBRIDGE P.C.

22         100 Light Street

23         Baltimore, MD 21202

24

25  BY:   JOEL L. PERRELL, JR., ESQ.

1

2  WILLIAMS & CONNOLLY LLP

3          Attorneys for HSBC Mortgage Corporation (USA)

4          725 Twelfth Street, N.W.

5          Washington, DC 20005

6

7  BY:   MATTHEW V. JOHNSON, ESQ.

8          R. HACKNEY WIEGMANN, ESQ.

9          JESSE T. SMALLWOOD, ESQ.

10

11

12  QUINN EMANUEL URQUHART & SULLIVAN, LLP

13          Attorneys for ResCap Liquidating Trust

14          51 Madison Avenue

15          22nd Floor

16          New York, NY 10010

17

18  BY:   ISAAC NESSER, ESQ.

19          BRAD EHRLICHMAN, ESQ.

20

21

22

23

24

25

1

2  FOLEY & LARDNER LLP

3          90 Park Avenue

4          New York, NY 10016

5

6  BY:   ALISSA M. NANN, ESQ.

7

8

9  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

10         Attorneys for UBS Real Estate Securities, Inc.

11         Four Times Square

12         New York, NY 10036

13

14  BY:   ALEXANDER C. DRYLEWSKI, ESQ.

15         ROBERT A. FUMERTON, ESQ.

16         SHAUD TAVAKOLI, ESQ.

17

18

19  CARPENTER LIPPS & LELAND LLP

20         Attorney for Liquidating Trust

21         1540 Broadway, Suite 3710

22         New York, NY 10036

23

24  BY:   JEFFREY A. LIPPS, ESQ.

25

1

2  SHANNON, MARTIN, FINKELSTEIN, ALVARADO & DUNNE, P.C.

3       Attorneys for Cadence Bank, N.A.

4       1001 McKinney Street, Suite 1100

5       Houston, TX 77002

6

7  BY:   MARK S. FINKELSTEIN, ESQ. (TELEPHONICALLY)

8

9

10  BURR & FORMAN LLP

11       Attorneys for Synovus Mortgage Corporation

12       420 North Twentieth Street

13       Suite 3400

14       Birmingham, AL 35203

15

16  BY:   VICTOR HAYSLIP, ESQ.  (TELEPHONICALLY)

17       BRENT D. HITSON ESQ.  (TELEPHONICALLY)

18

19

20  WEINER BRODSKY KIDER PC

21       1300 19th Street NOTEHOLDERS

22       5th Floor

23       Washington, DC 20036

24

25  BY:   TESSA K. SOMERS, ESQ.

1

2  BURR & FORMAN LLP

3        Attorneys for Synovus Mortgage Corporation

4        171 17th Street, NW

5        Suite 1100

6        Atlanta, GA 30363

7

8  BY:   JOHN OSHEA SULLIVAN ESQ.   (TELEPHONICALLY)

9

10

11  MURPHY & MCGONIGLE

12        Attorneys for Greenpoint Mortgage Funding, Inc. and

13        Summit Financial Mortgage

14        4870 Sadler Road

15        Suite 301

16        Glen Allen, VA 23060

17

18  BY:   CAMERON S. MATHESON, ESQ.

19

20

21

22

23

24

25

1

2  PALMER, LOMBARDI & DONOHUE LLP

3      Attorneys for Mortgage Investors Group

4      515 South Flower Street

5      Suite 2100

6      Los Angeles, CA 90071

7

8  BY:   ROLAND P. REYNOLDS, ESQ.   (TELEPHONICALLY)

9

10  ALSTON & BIRD LLP

11      Attorneys for SunTrust

12      90 Park Avenue, 15th Floor

13      New York, NY 10016

14

15  BY:   JOHN P. DOHERTY, ESQ.

16

17

18  ALSTON & BIRD LLP

19      Attorneys for SunTrust

20      One Atlantic Center

21      1201 West Peachtree Street

22      Atlanta, GA   30309

23

24  BY:   JASON H. WATSON, ESQ.

25

1                    P R O C E E D I N G S

2            THE COURT:  Okay.  We're here in Residential Capital

3    12-12020, actually, more particularly, in a series of adversary

4    proceedings.  I'll read the case numbers.  They're all 14- and

5    I'll just read the last digits.  01915, 01916, 01926, 01995,

6    01996, 01998, 01999, 02000, 02001, 02003, 02004, 02005, 02008,

7    02009.

8            Mr. Nesser?

9            MR. NESSER:  Good afternoon, Your Honor.  Isaac Nesser

10   for the ResCap Liquidating Trust.  Here with me today are Brad

11   Ehrlichman, at my firm, Quinn Emanuel Urquhart & Sullivan, as

12   well as Jeff Lipps of the Carpenter Lipps firm.

13           As Your Honor indicated we're here just to, I think,

14   primarily follow up on discussion from our last appearance

15   concerning case management.  If I can start, Your Honor, with

16   just a few updates since last we were here.  There's been some

17   movement in terms of settlement.

18           First, Citizens First, which is a case in this court

19   and before Your Honor; we'd previously indicated that that case

20   had settled, in principle.  That agreement is now signed.  We

21   expect to be filing a discontinuance shortly.

22           Also First Republic and Bank of America -- that's case

23   number 14-2009 -- has settled, in principle, subject to

24   documentation.  And we'll of course keep the Court updated as

25   that progresses.

1        As well, in Minnesota there's been some movement.  The

2  case against First Citizens Bank, which is 13-CV-3514, has

3  settled, in principle, as well, our case against Countrywide

4  14-CV-1743 is settled, in principle.  So there's been quite a

5  lot of activity.

6        Back in New York, in the district court, Judge Abrams,

7  as I think Your Honor may already know, issued an order

8  referring our cases against SunTrust to Your Honor.

9        THE COURT:  Has it hit the docket here yet?

10       MR. NESSER:  It has not yet hit the docket.  If

11  there's anything that we ought to be doing to facilitate that,

12  we're happy to do so.

13       THE COURT:  It'll happen.

14       MR. NESSER:  We have involved --

15       THE COURT:  Is anybody -- is counsel for SunTrust

16  present in the courtroom?

17       MR. DOHERTY:  I am, Your Honor.  John Doherty, Alston

18  & Bird.

19       THE COURT:  Thanks.  Nice to see you.

20       MR. NESSER:  And we've made sure that counsel for

21  SunTrust has been involved, or at least copied on

22  correspondence --

23       THE COURT:  Sure.

24       MR. NESSER:  -- through the meet and confer process.

25  Also, in the district court of Judge Daniels last week had us

1    in for a hearing on UBS's motion to withdraw the reference.

2    Judge Daniels, this morning, issued an order denying that

3    motion, without prejudice to reassertion, after Your Honor

4    resolves UBS's pending motion --

5            THE COURT:  I saw the --

6            MR. NESSER:  -- to remand.

7            THE COURT:  -- an ECF reference to his order, but

8    obviously the transcript isn't available yet.

9            MR. NESSER:  That's right.  And would it be helpful

10   for Your Honor to have that transcript?

11           THE COURT:  When it's ready, you can forward it to me.

12           MR. NESSER:  As well, Your Honor, otherwise in the

13   district court, a number of the defendants here have filed

14   motions to withdraw their reference and to transfer, and those

15   motions are proceeding on the ordinarily schedule.

16           THE COURT:  It would be --

17           MR. NESSER:  Turning to --

18           THE COURT:  -- helpful, Mr. Nesser, if you could post

19   on ECF a list of the cases in which motions to withdraw the

20   reference have been filed.  I wouldn't necessarily see them.

21   They get filed here --

22           MR. NESSER:  Yes.

23           THE COURT:  -- obviously, and then referred to the

24   district court, and without going back and looking at the

25   docket in every one of the cases, it's harder for me to track

1 | that, so it would helpful.

2 | MR. NESSER:  I can identify those now or --

3 | THE COURT:  No.

4 | MR. NESSER:  -- we can file it.

5 | THE COURT:  That's fine.

6 | MR. NESSER:  Turning to case management, Your Honor,

7 | the parties, over the last couple of weeks, have, I think it's

8 | fair to say, met and conferred extensively, and for the most

9 | part, rather productively, to prepare the proposed case

10 | management order that we filed on Friday, as Your Honor had

11 | directed.

12 | We've been able to resolve, consensually, a number of

13 | disputed issues.  There are just a handful that are remaining.

14 | The first of those -- and I'll just march through them, unless

15 | Your Honor has a different preference -- relates to the page

16 | limits --

17 | THE COURT:  I do have a different preference.

18 | MR. NESSER:  Okay.

19 | THE COURT:  So I did review -- you submitted a draft

20 | of the order showing plaintiff's proposals and defendants'

21 | proposals, and I've been through that.  In addition to what was

22 | in the proposal, or either proposal, I've made some other

23 | changes --

24 | MR. NESSER:  Okay.

25 | THE COURT:  -- to reflect my own thoughts about it.  I

1  think before we do that, let me see whether any of the

2  defendants want to be heard preliminarily.

3         What I propose to do with respect to the case

4  management order -- and I commend everybody because I think

5  you've made very substantial progress in coming to an

6  agreement.  I don't see the differences as that substantial,

7  and I appreciate the work that went into that.

8         But let me see, does anybody -- any of the defendants'

9  counsel wish to be heard before we go further?  You don't have

10  to.  Okay.  That's fine.

11         UNIDENTIFIED SPEAKER:  We can hear you --

12         THE COURT:  Okay.  That's fine.  So let me flag the

13  issues that I want to discuss, and maybe I'll tell you how I've

14  resolved some of the differences as well.

15         So I'll start with -- I'm looking at the draft that

16  was submitted to me that showed both plaintiff proposals and

17  defendants' proposals.  And I can tell you what else I've done.

18  So in the very opening paragraph -- and when I enter an order,

19  you'll obviously get to see it, so -- but I'm just adding a

20  sentence to the very opening paragraph to the effect that this

21  order may be made applicable to additional adversary

22  proceedings upon entry of a separate order providing for such

23  relief.  So that if any other cases, like Judge Abrams' case,

24  hasn't hit the docket here yet, I probably won't wait for that

25  to happen to enter a case management order, but a separate

1  order will just be entered doing that.

2          So in paragraph 3, on lead docket, I conferred with

3  the Clerk of Court, to see how we could affect what I think

4  you're trying to accomplish, and so I'll read to you what I

5  propose to do.  So there's a 2(a), "Any filing affecting two or

6  more of the above-captioned adversary proceedings shall be

7  filed, for administrative purposes only, in a newly created

8  docket, defined as the central docket, captioned In re: ResCap

9  Liquidating Trust Mortgage Purchase Litigation".  That's going

10 to be the name.  And then there will be an adversary proceeding

11 number.  It hasn't been opened yet.  I have the number.  They

12 picked a number way down the line so that it doesn't interfere

13 with anything.

14         And "This filing should include the caption" -- "The

15 filing should include the caption of the central docket in each

16 case to which it applies.  A filing on the central docket shall

17 be sufficient to give notice to all parties in these

18 proceedings.  Any filing affecting only a single case shall be

19 filed with that case only.  At such time as all cases included

20 within the central docket have been resolved, plaintiff's

21 counsel shall make a motion to close the case for the central

22 docket."

23         There's been some past experience where it's just sat

24 and nobody's done anything and so -- and then paragraph 2(b),

25 "A docket entry should be made in each adversary proceeding

1    that is now or hereafter become subject to this order

2    substantially as follows", and it just references the central

3    docket and so people know to go look there.  Okay.

4            In paragraph 4, on the initial motion practice,

5    against my better judgment, I've sided with the defendants on

6    the page count, but I'll be very inhospitable if somebody comes

7    to me -- yeah it's thundering now.  I just came in and it

8    was -- just started.  I'll be very inhospitable if people come

9    and ask for longer pages.  So the defendants want thirty-

10   five/fifteen, and I put that in.  There'll be thunder and

11   lightning if anybody asks for more.

12           Okay.  So one of the things I've tried to do, and

13   everybody ought to keep this in mind, when you do orders that

14   relate to filing of pleadings, do everything in seven-day

15   multiples.  It reflects the changes in the rules.  So instead

16   of thirty days, I've put twenty-eight.  It avoids the problem

17   about weekends and things like that.  So when they changed the

18   Civil Rules and the Bankruptcy Rules, they did everything in

19   multiples of seven.  I've tried to do that.  If it's a date

20   that doesn't have to do with filing a pleading, I haven't been

21   so concerned about it.

22           So in 4(b), the thirty has turned to twenty-eight, and

23   in paragraph 5, the thirty has turned to twenty-eight.

24           Paragraph 6, there were no disagreements.  I guess in

25   6(b) I'm going to change the thirty days to twenty-eight days.

1        MR. NESSER:  Your Honor, there was some disagreement

2   on 4(c).

3        THE COURT:  Hang on just a second.  Oh, I've struck

4   it.  I don't think it's needed.

5        Okay.  So 6(b), the thirty changes to twenty-eight.

6        On 8(g), presumptive deposition limits, I've gone with

7   the plaintiff's proposal, but I want to make something clear so

8   that -- if people don't have it in front of them, this is the

9   presumptive limit on the length of depositions.  The

10  presumptive limit is seven hours, but when I'm saying seven

11  hours, I fully anticipate that some of these depositions are

12  going to be more than seven-hour depositions, and I expect the

13  parties, in good faith, to seek to resolve the issue.

14       So what happens if you're taking a deposition and you

15  get to seven hours and everybody sort of agrees, yeah,

16  there's -- it's nonduplicative and there really is additional

17  material to be covered; you don't have to come back to me to

18  increase the seven-hour limit.  The only time you have to come

19  to me is if you disagree about the length of the deposition.

20       What I expect to happen is that the parties are going

21  to work together in good faith to agree on reasonable limits.

22  The seven-hour limit -- the presumptive limit is intended to

23  force you to agree, and if you don't agree, the seven-hour

24  limit applies.  And then when somebody arranges a prompt

25  telephone conference with the Court, and I find out that Mr.

1  Nesser, or one of his colleagues, has unreasonably tried to

2  impose a seven-hour limit, I'm going to say:  come on, you're

3  kidding, this is really -- this is a two or three-day

4  deposition; you're not complaining that they're being

5  duplicative.

6         So it's just a safety valve, but I really do expect

7  I'm never going to hear from you about the length of the

8  depositions.  People in good faith are going to work it out,

9  okay?  So yes, I've put the seven-hour presumptive limit; I

10 expect it'll be rare, if ever, that I'm going to hear that

11 people are disagreeing about what the length of a deposition

12 should be.  Okay?

13        A lot of depositions are going to be three or four

14 hours or two hours or one hour.  It's just what I don't want to

15 happen is everybody thinks every deposition is going to be

16 five-day deposition; they're going to wear people down.  And

17 that isn't going to happen.  Okay?  All right.

18        All right, expert discovery.  I've adopted the

19 plaintiff's proposal of 180 days and then 45 days.  I fully

20 anticipate, if the cases stay here with me, and we get further

21 down the road, we're going to have a discussion about this at a

22 subsequent case management conference.  And if the defendants

23 persuade me, given the number of experts and the amount of work

24 that has to be done, we need more time, I'm going to grant more

25 time.  Okay?  But we're going to start with the dates, the 180

1   days to complete expert discovery and the other dates that are

2   in the plaintiff's proposal.

3          Okay.  Sampling I do want to talk about, because at

4   least what I have down on my paper is a little different than

5   what either side has proposed.  I'm closer to the plaintiff's

6   proposal, but not quite there.

7          Mr. Nesser, have you had discussions so far with

8   defendants' counsel about sampling?

9          MR. NESSER:  We have, Your Honor, and what I can

10  report is yesterday I was informed by counsel for HSBC -- and I

11  don't want to put words in his mouth, but I was informed by

12  counsel for HSBC that, in the abstract, they are amenable to

13  sampling, as an approach in this case.  Of course, they reserve

14  their right to dispute the particular methodology that we would

15  propose, but that they're open to sampling as an approach, and

16  moreover, that they, I think, are conceptually in agreement

17  that the sample ought to at least be the starting point, if not

18  the end point, for discovery.  He's obviously reserved his

19  rights to seek additional documents, but it seemed to me as if,

20  in the first instance, there was some sense that the sample

21  ought to be the focus of discovery, if not the entirety.

22          As for the other defendants, there are three, maybe

23  more or less, that we expect probably will not be sampling

24  cases.

25          THE COURT:  Well, somebody told me last time there

 1 | were only eighty loans --
 2 |         MR. NESSER:  Yeah, some of these cases --
 3 |         THE COURT:  -- you're not going to sample when you
 4 | have eighty loans.
 5 |         MR. NESSER:  Yeah, that's right.  So some of these
 6 | cases are pretty small, and we expect that those won't be
 7 | sampling cases.  The final decision on those we'll be making
 8 | over the next couple of week.
 9 |         Other than that, Your Honor, we've asked -- I've
10 | asked, repeatedly, for the defendants to give me some sense as
11 | to, number one, whether they're amenable to sampling, in
12 | principle, number two, whether they're amenable to limiting
13 | discovery to the sample and have not, as far as I can recall,
14 | heard any responses.
15 |         THE COURT:  So your proposal was that you would --
16 | fourteen days after entry of the order you would propose a
17 | sampling methodology to any defendant as to which plaintiff
18 | intends to pursue -- prove through sampling.  That's fine.  You
19 | can do that in fourteen days, I take it.  You can be ready to
20 | do that within fourteen days?
21 |         MR. NESSER:  Yes, we expect to be able to.
22 |         THE COURT:  Okay.  I don't -- I mean, one size doesn't
23 | fit all.  If somebody's got just eighty loans, you're not going
24 | to sample.  If someone's got 10,000 loans, sampling is a little
25 | different than if there's 3,000 loans.

1              MR. NESSER:  Yes.

2              THE COURT:  You obviously have your sampling expert, I

3    take it.

4              MR. NESSER:  We've been discussing sampling with

5    various folks, yes.

6              THE COURT:  So I'm fine about your holding your feet

7    to the fire and saying propose the sampling methodology in the

8    fourteen days.  I also contemplate, but I want to hear

9    defendants' counsel, about saying within fourteen days after

10   they receive the proposed methodology they'll inform you

11   whether they agree to the proposed methodology.

12             Where I differ, somewhat, with what you proposed is

13   for every sampling -- defendant that does not agree to the

14   methodology, the parties shall meet and confer within fourteen

15   days after notification that the defendant does not agree to

16   the proposed methodology in an effort to agree on a sampling

17   methodology.

18             Okay.  You're going to make a proposal to them,

19   they're going to come back and say no.  Maybe they're going to

20   make a counter-proposal or maybe they'll say not now, never

21   ever.  That's a different situation.  If they come back with an

22   alternate proposal, I want to give you a couple of weeks to see

23   if you can work it out rather than firing off a motion.

24             MR. NESSER:  Um-hum.

25             THE COURT:  So I've built in -- and I want to hear

1  from defendants about it; I'm not saying this is exactly what

2  I'm going to go with, but the concept I have is you give them

3  your proposed methodology, if you're going to propose to

4  sample, they come back and they say -- if they say yes, fine;

5  if they say no -- if they say no, but we're open to sampling,

6  but you've got to do this, I want you to go and -- it works

7  best if you get whoever you're going to use to sit down with

8  whoever they're going to use, sampling expert, and try and

9  agree.  And you avoid filing your in limine motion with respect

10 to them.  So I want to build in a little bit of time to give

11 you a chance to work out the differences.

12         And then with respect to -- but I want it done sooner

13 rather than later, and that's why I rejected the defendants'

14 proposal.  But I want to see if people can work it out.

15         I thought that your proposed page limits and briefing

16 were fine with me.  And I suspect if somehow it turns out to be

17 more complicated, I'm going to hear cries that we need more

18 pages.  But we'll -- so I should raise this right now.  With

19 respect to any page limits that have been put in the order, I'm

20 hoping that people will abide by the page limits.  But my

21 practice is not to require motions; if the defendants are

22 working on a motion to dismiss in the omnibus motion, they're

23 at thirty-eight or thirty-nine pages and the -- it's at thirty-

24 five pages.

25         So you send a letter to the Court, with a copy to

1   opposing coun -- first you ask them if they have an objection.

2   If they don't, you send a letter to the Court and you tell

3   me -- I don't want motions, okay?  Given the number of counsel

4   involved, telephone isn't -- I think everybody needs to know

5   what's going on.  So just send a quick letter to the Court,

6   tell me what opposing counsel -- whether they consent or not.

7   I don't always agree.  And if you say I want seventy-five pages

8   and the other side says yes, it isn't happening, okay?  So

9   don't think just because the other side consents that I will

10  agree.  But I don't want motions; just send a letter to the

11  Court; you'll get an answer very quickly, okay?  Sometimes

12  these issues -- you're two days away from the deadline for

13  filing a brief, and you need to know.  Okay?  You'll get an

14  answer quickly, okay?  I just -- that goes for all the motion

15  practice, okay?  Shorter is better than longer.

16         And the other observation I'd make is -- I'm sure none

17  of you would ever do this, but I get so many briefs, the first

18  ten pages of which repeat the history of ResCap.  Don't.  Okay?

19  Just deal with the issue -- just go right into the issue that

20  you're dealing with.  Save the preliminaries.  I've lived with

21  the case.  All right?  It's a lot easier to make the page limit

22  when you don't give me eight pages of history that don't really

23  bear on the motion that's before the Court.  Okay.

24         Paragraph 12 on ADR.  Again, I want to hear from both

25  sets of counsel.  So I've broken this down into subparagraphs

1   (a), (b), (c), (d), (e), (f), and (g), but here's where my

2   thinking is.  I said at the last hearing that I believe --

3   first off, I'm a big believer in mediation, but to be

4   meaningful, the parties have to have -- particularly the

5   defendant -- they have to have sufficient information to make

6   an intelligent decision about it.

7           So you indicated a disagreement.  You listed -- said

8   that the plaintiffs -- the defendants wanted three categories

9   of information.  You said you will only do two of the three

10  categories of information.  I'm prepared to order you to

11  provide the information in categories 1 and 2.

12          In the draft that I have, plaintiff -- "The Court

13  believes that these actions could benefit from early mediation.

14  Mediation will be most meaningful if plaintiff has first

15  provided defendants with information helpful to the defendants

16  in evaluating the settlement alternatives.  The defendants have

17  identified categories of information that they believe would

18  facilitate evaluation of the settlement.  Plaintiff has agreed

19  promptly to deliver to defendant, subject to Federal Rule of

20  Evidence 408, all the reasonably accessible nonprivileged

21  information with respect to two of the three categories of

22  information requested by defendants.  Those categories are as

23  follows" -- and I just copied exactly.  "The Court directs that

24  all reasonably accessible nonprivileged information in the

25  above 2 categories shall be produced to defendants, subject to

1    FRE 408, within twenty-eight days from the date of the order.

2    Okay.

3            Then in the next subparagraph (y), and I really want

4    to test this out, whether you think you're prepared to do this,

5    because I really would like this to happen.  It says, "Counsel

6    for all parties shall confer promptly seeking to agree on a

7    mediator to conduct a global omnibus mediation (to be followed,

8    if the mediator deems appropriate, with separate mediation

9    sessions in each of the cases).  The mediation shall commence

10   as soon as possible after the twenty-eight-day period in which

11   plaintiff will produce documents to the defendants as provided

12   in this paragraph.  If the parties cannot agree on a single

13   mediator, within fourteen days from the date of the order, they

14   shall notify the Court which shall then determine how a

15   mediator shall be appointed."

16           Then in the next subparagraph, and I want to hear from

17   you about this, "The cost of the mediator shall be split evenly

18   between plaintiff and defendants for all omnibus mediation

19   sessions and the work of the mediator in connection therewith.

20   The cost of the mediator shall be split evenly between the

21   plaintiff and the defendant for any separate mediation sessions

22   and the work of the mediator in connection therewith."

23           And then the next subparagraph, "The mediator is

24   authorized to direct the parties to provide any additional

25   nonprivileged information that the mediator believes would be

1   helpful in resolving the cases."  So if the defendants prevail

2   on the mediator, look, we really need this additional

3   categories of document, I'm going to leave it, as I always do,

4   to the mediator to decide what should happen.

5          And then the next subparagraph, "Unless otherwise

6   ordered by the Court, the omnibus mediation and the separate

7   mediation shall be concluded within ninety days of the initial

8   omnibus mediation session.  Unless otherwise ordered by the

9   Court, none of the deadlines for any other pre-trial

10  proceedings set forth in this order shall be extended or

11  modified as a result of any ongoing mediation."

12         And you ought to be able to figure out in ninety

13  days -- I think you'll settle some cases and you won't settle

14  some others, but let's get it -- it doesn't stop you to

15  continue to settle -- talk settlement during the case, but I

16  think ninety days to see whether you can do it.

17         Let me stop here.  I mean, the real question is do you

18  think, realistically, you can all agree on one person to be a

19  mediator, an omnibus mediator?

20         MR. NESSER:  We could certainly try, and I'm hopeful

21  that we'll be able to agree.  Obviously easier for me to say

22  than fifteen sets of defendants.

23         THE COURT:  Yes.  So what I've done in cases like

24  Dewey -- but there are different kinds of cases; I've got all

25  of these avoidance actions, right, and so I said identify five

1   mediators, but they're mediating separate cases.  Limit the

2   number, so if one has a conflict another one doesn't.

3          MR. NESSER:  Right.

4          THE COURT:  And people -- they have a learning curve,

5   they get up to speed, they're familiar with the case.  I think,

6   to start out, if you can agree on one mediator, I suspect

7   you -- most all of you will be able to agree on the kind of

8   person you want to be a mediator, somebody who you know will be

9   fair, who may have some knowledge about the issues involved,

10  and see where you go.

11         I mean, so when I've done the five mediators, no one's

12  ever come back to me and said we couldn't agree on one.  I

13  think, in some cases, I've done three.  I've been reluctant to

14  have too small a number, but I think -- my sense, and I could

15  be wrong about this, is that defendants who are seriously

16  interested in settling the case, if a reasonable settlement can

17  be worked out, to put it euphemistically, don't want to have

18  egg on their face because somebody else made a better deal than

19  they did.  And sort of coming up with some -- the benefit of

20  the omnibus mediation is you may be able, in the context of an

21  omnibus mediation, to agree on a set of principles that, when

22  applied to individual cases, will give a number that everybody

23  thinks is fair.  So I think there's an advantage of doing it.

24  It's different than the normal preference kind of cases that

25  come up.  So let me see whether there's anything else that I

RESIDENTIAL CAPITAL, LLC, ET AL.                    29

1   wanted to give a chance for people to talk about.

2           I think that's pretty well it.  Do you want to

3   comment, or do you want to give others a chance to address any

4   of these issues, Mr. Nesser?

5           MR. NESSER:  No, Your Honor, the only other issue I'd

6   had on my list was whether you had any further guidance for us

7   in terms of coordination with Minnesota.

8           THE COURT:  Well, so I put two things in this draft.

9   One paragraph says, "Plaintiff shall provide a copy of this

10  order to each district judge in the Southern District of New

11  York before whom a motion to withdraw the reference in any of

12  the cases carried by this order had been filed."  It's just to

13  let him know things are moving along.

14          And then I put a paragraph, and I debated whether to

15  have you do it or whether I would do it.  But the way I have it

16  drafted is, "The Court intends to send a copy of this order to

17  each judge in the United States District Court for the District

18  of Minnesota before whom a similar case commenced by

19  Residential Funding Company, LLC or ResCap Liquidating Trust is

20  currently pending, for the purpose of permitting each judge to

21  consider whether a common schedule should be established in all

22  similar cases raising common issues, whether pending in New

23  York or Minnesota.  The Court is prepared to adjust the

24  schedules set forth in this order to accommodate a common

25  schedule in all of the cases."

1        So if there -- quite frankly, if there was one or two

2    judges that had the cases, I would tell you I just want to

3    pick -- I want to call the judge.  Ten judges, it's just not

4    realistic.

5        MR. NESSER:  Your Honor, what I can tell you, in that

6    respect, is that a couple of the ju -- two of the judges in

7    front of whom -- two of the district court judges, in front of

8    whom we appeared in Minnesota, suggested, without committing,

9    that it seemed to them as if this case might be appropriate for

10    referral to a single magistrate in Minnesota for the purposes

11    of coordinating at least discovery.  It's not clear to us yet

12    whether that will happen and how that will happen, and whether

13    the views of the two judges we heard from reflect the views of

14    other judges in that district.  But certainly, if that were to

15    occur, you would wind up with one judge in Minnesota.

16        THE COURT:  Yes.  So what I probably -- I'll listen to

17    what everybody has to say, but what I would probably do is

18    attach this to an e-mail addressed to the judges.  So if there

19    weren't ten, I would probably do it as a draft and suggest --

20        MR. NESSER:  Right.

21        THE COURT:  -- but here I'll just enter an order, send

22    it, say what I said.  Then I'm certainly open to adjusting the

23    schedule if others wa -- I think a common schedule makes a lot

24    of sense.

25        Other points you want to make, Mr. Nesser?

 1          MR. NESSER:  Nothing else, Your Honor.

 2          THE COURT:  So let me hear from defendants' counsel.

 3          MR. JOHNSON:  Good afternoon, Your Honor.  Matt

 4   Johnson of Williams & Connoly, representing HSBC Mortgage Corp.

 5          I'm going to be very brief.  The only issues that I

 6   would like to get clarification --

 7          THE COURT:  Um-hum.

 8          MR. JOHNSON:  -- on are with respect to the ADR issue.

 9          THE COURT:  Yes.

10          MR. JOHNSON:  Has Your Honor proposed a time limit,

11   after defendants receive those two categories of documents, for

12   the omnibus mediation to occur?

13          THE COURT:  Well, I suppose, yes, because I've said --

14   I said as soon -- the mediation should start as soon as

15   reasonable possible after the twenty-eight days to get the

16   documents, okay, and that's going to be subject to a lot of

17   schedules, okay, and the mediator's schedule.  Okay?  And I've

18   said ninety days from the first mediation session.  So I

19   haven't put an absolute deadline, because you're going to

20   have -- given the number of lawyers and a mediator's schedule,

21   I would hope that it would happen -- you ought to be able to

22   get something scheduled.  And then I -- once it starts, I want

23   ninety days.

24          MR. JOHNSON:  Okay.

25          THE COURT:  And that's -- does that work for you, Mr.

1  Johnson?

2          MR. JOHNSON:  I think it does, subject to -- and I

3  think Your Honor's made this clear, if we need to come back and

4  it's going to be a little after ninety days, we'll let the

5  Court know and we'll come back.  I think the -- frankly, I

6  think the bigger issue than the coordination of schedules is

7  going to be the chance to actually use this information and

8  evaluate it to look at each defendants' respective case and

9  prior to going to mediation, figuring out, okay, what situation

10  are we in, what does this look like.  Defendants, quite

11  honestly, just are not in a position to do that now, and that's

12  why we've requested this information.

13          Secondly, I had a question regarding defendants'

14  proposed paragraph 14 and whether that was included in its --

15  it was entitled "No waiver or prejudice" --

16          THE COURT:  Oh, I put that in.

17          MR. JOHNSON:  Okay.  Okay.

18          THE COURT:  I did.

19          MR. JOHNSON:  Thank you.

20          THE COURT:  I'm sorry I didn't -- I used -- I included

21  it exactly as you drafted it.

22          MR. JOHNSON:  Okay.  And lastly, Your Honor, just

23  to -- lastly, on my account, just to update Your Honor on, kind

24  of, the goings on in the litigation -- and I would agree with

25  Mr. Nesser that we engaged in extensive meet and confer

1   sessions, with both defendants, collectively, and also with

2   plaintiff's counsel, with respect to the CMO.  And I certainly

3   hope that, going forward, we can continue to cooperate.

4           In that regard, and following up on Your Honor's

5   comment at the last scheduling conference, defendants

6   collectively sent a letter yesterday to Mr. Nesser regarding

7   priority discovery requests.  Obviously we haven't served

8   discovery requests yet, but we sent this letter to let

9   plaintiffs know that discovery requests would be coming, and I

10  think there were six -- yeah, six particular categories of

11  documents that we let plaintiffs know -- that we let plaintiff

12  know we would be seeking in our discovery request, and that we

13  would hope plaintiff would agree to prioritize the production

14  of.

15          THE COURT:  So we heard -- and what I would hope would

16  happen, and it sounds like this is what you've done; you told

17  them what you want first.

18          MR. JOHNSON:  Exactly.

19          THE COURT:  Okay.  And my view is they should try and

20  honor what you want first.  I got a little nervous when I heard

21  you say "priority discovery".  I don't believe in priority of

22  discovery because you served your request before they served

23  their request, okay.

24          But on the point of when you tell them it would be

25  most helpful to us to get this first, the order provides for

1    rolling discovery.  And I don't appreciate when the response of

2    the opposing party is to provide the dribble first that's the

3    least meaningful to the case.  Okay.  So sometimes it's hard to

4    get the stuff you want first, but you have -- I assume -- look,

5    I assume you're going to work it out.  And you're all good

6    counsel, and I assume you're going to work it out, and I'm not

7    going to hear about it.  And if you have a problem, you arrange

8    a call and we deal with it promptly without any writings, okay?

9           MR. JOHNSON:  Understood, Your Honor.  Would you like

10   a copy of the letter or --

11          THE COURT:  I don't think I need to see it --

12          MR. JOHNSON:  Okay.

13          THE COURT:  -- unless Mr. Nesser thinks I need to see

14   it.

15          MR. NESSER:  No, Your Honor.

16          THE COURT:  Okay.

17          MR. JOHNSON:  And with respect to sampling, Your

18   Honor --

19          THE COURT:  Yes.

20          MR. JOHNSON:  -- it's a very, very important issue,

21   and one that certainly is worthy for discussion.  And on that

22   issue, my partner, Hat Wiegmann, is going to speak.  He's

23   been --

24          THE COURT:  Okay.

25          MR. JOHNSON:  -- focused on this issue extensively.

1          THE COURT:  Thank you.

2          MR. WIEGMANN:  Good afternoon, Your Honor.  Hat

3    Wiegmann from Williams & Connoly, on behalf of HSBC Mortgage.

4          Your Honor, I won't try to talk you out of our --

5    agreeing to our original proposal, which was to wait until

6    expert discovery to decide the sampling methodology.

7          THE COURT:  You're right in not trying to talk me out

8    of it.

9          MR. WIEGMANN:  But what I would say is -- I guess I

10   would beg for as much time as possible.  To our knowledge,

11   there has never been a case in which a court has approved a

12   sampling methodology for an originator's specific methodology

13   applied across multiple securitizations, which is what we have

14   here.  That was not the case in the FHFA litigation, much

15   simpler sampling problem.  It's very complicated here, very

16   factual-specific.  It's going to take a lot of careful and

17   complex assessment, and we think that the more complete the

18   factual record on which that is done, the better.  Right now,

19   if we proceed under the plaintiff's schedule, we are really

20   hamstrung, because we would be assessing this in a vacuum.

21   Right now, we don't know the loans that are at issue in the

22   case, at least in our complaint, the HSBC --

23         THE COURT:  How many loans did you sell to them?

24         MR. WIEGMANN:  I don't even have that information

25   after

1        THE COURT:  Well, that you ought to    you should have

2   that in hand.

3        MR. WIEGMANN:  We've been work

4        THE COURT:  I can't believe you don't have that

5   information.

6        MR. WIEGMANN:  Well, Your Honor, we've sold them over

7   a long

8        THE COURT:  Ask Mr. Johnson.  Do you know

9        MR. WIEGMANN:  Over a long period of time it was

10  3,500, but I don't know whether all of those

11       THE COURT:   That's not a lot of loans.

12       MR. WIEGMANN:    all of those are at issue in the

13  case or not.

14       THE COURT:  But that    3,500 loans is not a lot of

15  loans.

16       MR. WIEGMANN:  Well, okay.  Thirty-five hundred loans.

17       THE COURT:  In FHA    FHFA, you know, it started out

18  talking about 20 or 30,000 loans there were.

19       MR. WIEGMANN:  Right.  The samples in that case were

20  larger than the loans that are at issue in this case.

21       THE COURT:  No, well    no they weren't, but that's

22  okay.

23       MR. WIEGMANN:  So, Your Honor, we don't know what

24  securitizations the loans were put into.  We don't have    so

25  we don't know    we're not able to compare our loans to the

1   other loans that are in those pools.  We don't have the loan

2   data tapes that have the relevant information, both for our

3   loans and for the other loans in the pool.  We need to be able

4   to assess the homogeneity of the sample.

5          My only point is there's a great deal of work to be

6   done.

7          THE COURT:  May I ask you this?  Do you have a

8   sampling expert?

9          MR. WIEGMANN:  We have retained a sampling expert.

10          THE COURT:  So I would just say that    and you may be

11   very experienced in dealing with statistical sampling issues,

12   but what I found as a practicing lawyer and since I've been on

13   the bench is that lawyers are very poor interlocutors with

14   respect to the nitty-gritty details, and that what you should

15   be endeavoring to do is you and your sampling expert sit down

16   with Mr. Nesser and his sampling expert and start to hash this

17   out.  And I think you will resolve a lot of the issues.  But if

18   you're going to be the interlocutor for your person and Mr.

19   Nesser or his colleagues for his person, the next thing I'll be

20   hearing is we need months more to discuss this.

21          Okay.  What I contemplate is    look, if you wind up

22   litigating the case to judgment, fine.  Whatever court that is,

23   that'll happen.  History, in all the courts that have had RMBS

24   related cases, most of the cases settle.  Do it painlessly and

25   get it done more quickly.

RESIDENTIAL CAPITAL, LLC, ET AL.                    38

1       I don't think I'm equipped at this point to address

2  the substance.  I understand the points you've made, and I'm

3  not ready to adjust the schedule.  I think what I've tried to

4  build is this concept of they give you their methodology.  You

5  respond.  You say no, never, in which case I'll have a motion,

6  or you say we're open to the concept but this doesn't work.  We

7  don't have enough information.  We don't do this.  Then you can

8  sit and confer, get your experts together.  You better have

9  your sampling expert.

10      I can't imagine, Mr. Nesser, you're proposing a

11  methodology where you don't have your expert already engaged.

12      MR. NESSER:  We do, Your Honor.

13      THE COURT:  Okay.  So your first order of business is

14  to get them together.  I don't care what your ground rules are.

15  If you want it without prejudice, that it can't be used for any

16  purpose other than to resolve this thing, neither of you have

17  to worry about ammunition for later deposition.

18      Okay?  I want you to work this out as a practical

19  matter and don't be the interlocutor to do it.  Get your

20  experts together with you, but

21      MR. WIEGMANN:  Understood, Your Honor.  So we will

22  take up the issue with the plaintiffs.

23      THE COURT:  Okay.

24      MR. WIEGMANN:  If we don't have the data to

25  appropriately assess the methodology then we will inform the

1    Court in our motion papers, if it comes to that, that we don't

2    have the data to competently assess what they've done.

3            THE COURT:  Okay.

4            MR. WIEGMANN:  And we'll alert you to that.

5            THE COURT:  Okay.  Anything else?

6            MR. WIEGMANN:  Thank you, Your Honor.

7            THE COURT:  Thank you very much.

8            Mr. Johnson, is there anything else you wanted to

9            MR. JOHNSON:  No, Your Honor.  I think there may be

10   some other defendants

11           THE COURT:  Okay.

12           MR. JOHNSON:    who would like to be heard.

13           THE COURT:  That's fine.

14           MR. JOHNSON:  Anybody else want to be heard?  Come on

15   up.

16           MR. FUMERTON:  Yes, Your Honor.  Robert Fumerton from

17   Skadden, Arps on behalf of UBS RESI.  Like Mr. Wiegmann, we've

18   dealt with this sampling issue extensively on behalf of UBS and

19   FHFA in the NCUA cases.  As a threshold issue my client, unlike

20   a lot of other defendants here, did not originate a single loan

21   at issue here.  Plaintiff alleges there are 1,900 loans we sold

22   to them.  We don't have any of those loan files.  As far as we

23   know plaintiff doesn't have any of those loan files.  And

24   locating those loan files, and, just as importantly, the

25   applicable loan guidelines, is an enormous task, and in many

RESIDENTIAL CAPITAL, LLC, ET AL.                    40

1    instances in other litigations we've had against this law firm

2    they've been only able to locate barely half of loan files in

3    the proposed sample.

4           Your Honor, Your Honor's asking that we meet and

5    confer with plaintiff about proposed sampling methodology.  We

6    have no problem, in the abstract, if plaintiff attempts to

7    prove their case through sampling.  We think there's going to

8    be such a small number of loans after our motion to dismiss

9    that sampling may not be necessary.

10          THE COURT:  You really think so?

11          MR. FUMERTON:  But, Your Honor, in an adversarial

12   system, respectfully, we can't be in a position where our

13   expert has to say you're using this proposed methodology to try

14   to prove claims against our client.  You should do this

15   differently.  You should sample more.  You should do a

16   different type of sampling.  You should get more originators.

17          THE COURT:  You know, I've read some transcripts of

18   arguments in some of the cases where counsel standing in your

19   shoes have    it sounds like you're almost reading the

20   transcripts of the arguments that were made and rejected in

21   those cases.

22          Your argument is premature, okay?  I take your point

23   that UBS didn't originate any of the loans.  How many

24   originators did it buy loans from?

25          MR. FUMERTON:  We bought    we bought

1              THE COURT:  Yes.

2              MR. FUMERTON:  We bought loans from twenty-five,

3     thirty originators.  We don't know, because plaintiff hasn't

4     identified the specific loans at issue, how many originators

5     are at issue.  But what I can tell Your Honor is no one

6     disagrees, in the abstract, that sampling can work under

7     certain circumstances.  The two ways sampling falls apart in

8     these cases are one, the sample's not representative of the

9     target population, and, two, the margin of error is too high.

10    We can't address that based on abstract methodology.  We can't

11    even address that based on a list of loan numbers.  A list of

12    loan numbers on what they claim their sample is going to be is

13    a fairy tale.  They can't find those loan files.  We don't have

14    them.  They don't have them.  In the other cases we're

15    litigating before Judge Cote right now, in the MARM Trust v.

16    UBS case they were only able to find half of the loan files in

17    their sample.  For one originator they couldn't find any of

18    them.

19             THE COURT:  May I ask you?  Are these cases that UBS

20    has brought against originators complaining about breach of

21    representations and warranties in the loans you purchased?

22             MR. FUMERTON:  No.  These are cases where we're sued

23    by a trustee.  We're sued by Fannie and Freddie in the FHFA

24    litigation.

25             THE COURT:  Right.

1          MR. FUMERTON:  And we did make these arguments to

2     Judge Cote, but she didn't disagree with them.  She recognized

3     the difficulty in finding loan files and finding guidelines.

4     That's why Judge Cote did not approve any sampling methodology.

5     She did not allow them to make a motion in limine, which is

6     exactly what they're seeking here.

7          What Judge Cote did is something very different.  She

8     said based on the list of loan files they provided, given the

9     information you have at this time, if you have a 702 challenge

10    based on that information you have to make it now.  She did not

11    endorse a sampling methodology or preclude defendants from

12    coming back after a full record and saying look.  You couldn't

13    find these loan files.  Therefore your sample is not

14    representative, your margin of error is too high, and all of

15    the other arguments that we'll have under 702.

16          THE COURT:  Okay.  So I would just come back to this.

17    I'm not rejecting your argument.  I'm just telling you your

18    argument is premature, okay?

19          But let me ask Mr. Nesser.  How are you going to

20    propose a sampling methodology to UBS?  Do you have loan files?

21    Do you have the loan numbers?  What information do you have

22    specifically with respect to the UBS loans on which you're

23    suing?

24          MR. NESSER:  Your Honor, we know what the loans are.

25    We know what the loan numbers are.  We know what the loan types

1  are.  We know what the performance of those loans has been.

2  And so we have, obviously, additional information.

3         All of this information, by the way, we believe is

4  equally available to counsel for UBS.  And based on the

5  information that we have available we believe that we can

6  generate a sampling methodology that is enough to have a

7  meaningful meet and confer, certainly, as well as enough to

8  have a meaningful motion to Your Honor.

9         THE COURT:  So what I'm approving is a provision in

10  the case management order that tells you how to go about it

11  from today.  I thought about whether the fourteen-fourteen-

12  fourteen time periods were enough time, whether that was enough

13  time.  And it may or may not be.  And it may be that Mr.

14  Fumerton is going to convince me     you make your motion

15  he's going to convince me that with respect to UBS the Court

16  can't approve sampling methodology for the reasons that he

17  argued, which it's almost like a broken record of transcripts

18  I've read in other cases where the argument's been made and

19  rejected.  Okay?  I don't know, because I don't have facts

20  today.  And I either will have facts when you make a motion or

21  you'll work it out, which is the preferable course.

22         I'm not going to pretermit the exercise to try and

23  this case cries out for sampling methodologies, plural, because

24  it may not be the same for all.  One size doesn't fit all.  And

25  it's my intention to move these cases.  It may be you'll be

 1  unsuccessful with your motion, because you won't be able to

 2  satisfy the Court that sufficient information is available at

 3  the present time.  We don't whether the sample is going to

 4  work, not work, et cetera.  But we'll see.

 5          All right.  Anybody else want to be heard?

 6          MR. FUMERTON:  Your Honor, may I make two brief

 7  points?

 8          THE COURT:  If it's about sampling, I don't want to

 9  hear it.

10          MR. FUMERTON:  Can I hand up a decision from Judge

11  O'Toole just two months ago on this exact issue in

12          THE COURT:  Sure.

13          MR. FUMERTON:    the Federal Home Loan Bank case?

14          THE COURT:  Yes.  Did you give it to Mr. Nesser?

15  Thank you.

16          Okay.  I'm not making any decision for today.  The

17  only decision I'm making is what's going into the case

18  management order, and we'll see.  Yes, it's going to move you

19  along.  And we'll see what happens.

20          Okay?  You have any other points other than sampling?

21          MR. FUMERTON:  Your Honor, just for clarification

22          THE COURT:  Do you have any other points other than

23  sampling?

24          MR. FINKELSTEIN:  Your Honor, this is Mark Finkelstein

25          MR. FUMERTON:  Thank you, Your Honor.

1           THE COURT:  Hold on.

2           MR. FINKELSTEIN:     for Cadence Bank.

3           THE COURT:  Hold on.

4           MR. FINKELSTEIN:  Yes, sir.

5           THE COURT:  All right.  Go ahead.  Identify yourself

6    again.

7           MR. FINKELSTEIN:  This is Mark Finkelstein,

8    F-I-N-K-E-L-S-T-E-I-N, for Cadence Bank.

9           THE COURT:  Thank you.  Go ahead.

10          MR. FINKELSTEIN:  You're welcome.  My question is I'm

11   new to this, so I don't understand how why it's structured the

12   way it is, but I'm wondering why at the time that plaintiff

13   tells us it intends to pursue proof through sampling with

14   respect to my client, why plaintiff can't also provide me not

15   only with the methodology but with the proposed sample?  Why do

16   I have to commit to agree to plaintiff's sampling methodology

17   before I know what the sample looks like?

18          It seems like it's a Catch-22 or a trick.  And maybe

19   I'm just the only one who sees it that way, but I would prefer

20   to visit with plaintiff about all the loans that he thinks are

21   at issue, which is the information I've been requesting since

22   the inception of this case, so that we can identify those loans

23   with respect to which plaintiff thinks there were defaults or

24   other failures to comply with the representations and

25   warranties that plaintiff thinks are actionable, and then we

1   can look at those loan files.  Even though there are 6,500 of

2   them so far I don't view that as a big number of loans.  And so

3   my problem is if I know the methodology and I know which loans

4   are at issue I can readily respond to plaintiff within probably

5   not fourteen days but some reasonable period of time

6             THE COURT:  No, fourteen days.

7             MR. FINKELSTEIN:    about whether or not we're in

8   dispute.

9             THE COURT:  No, fourteen days.

10            MR. FINKELSTEIN:  Pardon me?

11            THE COURT:  No, you're going to have fourteen days.

12            MR. FINKELSTEIN:  No, I know   well, the way it's

13  structured I have fourteen days to say whether or not I agree

14  to the methodology, but why can't I also have the sample?

15            THE COURT:  Well, it sounds like you've already been

16  speaking with Mr. Nesser.  If you haven't, I encourage you to

17  do it.  And certainly when you get their proposed sampling

18  methodology, to the extent you think it's disclosed

19  insufficient information don't wait the fourteen days to file

20  an objection.  Pick up the phone.  You ought to be talking to

21  each other right now and trying to hammer out as many of these

22  issues as possible.

23            I'm not unsympathetic to the point you're raising, and

24  I'm not looking forward to having a large in limine motion

25  filed with factual issues as to many of the defendants such

RESIDENTIAL CAPITAL, LLC, ET AL.                    47

 1   that the Court can't resolve the motion at that point or has to

 2   deny it without prejudice.  That's not going to advantage the

 3   plaintiff if that's the result.  But nor do I take kindly to

 4   the approach of a defendant that sits back its fourteen days,

 5   files an objection that just says you haven't given us

 6   sufficient information, and then basically does a rope-a-dope

 7   defense rather than sit down and try and work it out.

 8          I expect the parties to discuss in good faith and try

 9   and resolve the issues regarding sampling.  I don't intend to

10   steamroller over defendants.  The defendants are entitled to

11   know what the basis for the proposed methodology is and have

12   adequate information to be able to respond, to have your own

13   experts look at the proposal and see what works, what doesn't

14   work, how it has to be adjusted.

15          So the defendants shouldn't leave here today thinking

16   that the Court has already decided that I'm going to stamp

17   whatever Mr. Nesser gives me, because that isn't going to

18   happen.  If Mr. Nesser wants his sampling methodologies to

19   succeed he better come forward with sufficient information to

20   show that the sample is the appropriate size and quality and

21   historical information is available and all the other things

22   that are going to be required.

23          It's not going to get decided today.  We're going to

24   get this ball rolling, though.

25          All right.  Anybody else want to be heard?

1          MR. FINKELSTEIN:  Thank you, Your Honor.

2          MR. LEVY:  Good afternoon, Your Honor.  Richard Levy

3   of Pryor Cashman.  I represent Synovus Mortgage, which is the

4   Southeast regional lender    regional originator, and Primary

5   Capital, which is a third party seller of loans.

6          My concern on the sampling, Your Honor, is one that

7   goes to the point Your Honor made about attorneys being poor

8   interlocutors on these kinds of technical matters.  Your Honor

9   is suggesting that we need to have experts.  Neither of my

10  clients yet have experts in these actions, which are basically

11  five or six weeks old.

12         The structure that's been proposed today puts us in a

13  position where we have a fourteen-day window where the

14  plaintiff gives us information, a fourteen-day period where

15  we're supposed to be able to respond.

16         Experts aren't going to be hired tomorrow.  It just

17  doesn't happen that way.  And Your Honor knows from your own

18  experience that that's not the way the expert process works.

19         THE COURT:  So, but in a case like this, Mr. Levy, and

20  I'll let you continue on.  How many loans do your clients have?

21         MR. LEVY:  Your Honor, I don't know the exact numbers.

22  I believe that Synovus is something like 5 or 600.  In the

23  Primary Capital case the allegation is something like 800.  I

24  think it may be more than that, but I don't think it's    I

25  don't think it's anything on the order of the HSBC's or UBS's.

1        THE COURT:  Sure.  So what usually happens in a case

2   like this is that you start talking to the other defendants'

3   counsel, and you join together and agree on an expert who can

4   be retained for more than one lender.  It's crazy for everybody

5   to have their own expert.

6        MR. LEVY:  That may be, Your Honor.  The problem is,

7   though, that, for example, my loan pool may be completely

8   different from somebody else's loan pool.

9        We're geographically limited in one instance.  For

10  example, Synovus is only a Southeastern lender.  It's a

11  Southeastern originator.  It's going to be different from

12  somebody who's originating or selling third-party loans that

13  come from other geographies where the loan experience may be

14  far worse, where the pools may have been comprised of

15  completely different quality loans.  So I can't    I understand

16  Your Honor's point, but I think the generalization doesn't

17  necessarily hold that an expert suited to one defendant is

18  necessarily going to be suitable to another.

19       THE COURT:  You got a lot of lawyers out here

20  representing different lenders, and I think you'll solve this

21  problem.

22       MR. LEVY:  We'll do our best, Your Honor.  I will say

23  that I think the fourteen-fourteen-fourteen structure puts us

24  in a terrible bind at terrible expense, frontloaded in this

25  case, and it's unfortunate for my clients.

1           I'll make it very clear.  My clients just aren't happy

2   campers today.

3           THE COURT:  Okay.  Anybody else?

4           MR. DOHERTY:  John Doherty, Alston & Bird, on behalf

5   of SunTrust.  We don't yet have an adversary proceeding number.

6   The case hasn't been docketed.  We sort of started with that.

7           I want to talk about    and if this is the appropriate

8   time to do it I'm happy to do it now, sort of, we'll all here.

9           THE COURT:  Yes.  Look.  It'll be a day before I get

10  an adversary proceeding number.

11          MR. DOHERTY:  Right.

12          THE COURT:  I mean it's going to happen.

13          MR. DOHERTY:  Understood.

14          THE COURT:  And it would be my intention to have this

15  order apply to SunTrust as well.  But go ahead.

16          MR. DOHERTY:  So let me just talk about that just a

17  little bit.

18          THE COURT:  Sure.

19          MR. DOHERTY:  Because my case is different.  It's

20  different from every other defendant's case that's here.  It's

21  different in at least three ways.

22          The first is the plaintiff has already filed, as of

23  right, its amended complaint.  So whereas in paragraph 3 of the

24  case management order

25          THE COURT:  You're ahead of the game.

1          MR. DOHERTY:  Well, they    according to the case

2    management order they have a right to file an amended

3    complaint.  They've already used that right in the district

4    court.  So therefore, as against my client, they don't have

5    that right any longer.  So that's one way.  If I were to meet

6    and confer with RFC's counsel I would talk to them about that

7    issue.  But that's something that should not be in our case

8    management order.

9          The second is I'm the only defendant in the room who's

10    filed not one, but two, motions to dismiss that are currently

11    before Your Honor.  Once this case is referred there will be on

12    the docket    it's docket number 34 at the district court level

13    a motion to dismiss the amended complaint that's been fully

14    briefed.  And Judge Abrams specifically referred that case to

15    Your Honor for disposition.

16          So how do we marry the case management order and the

17    pending motion to dismiss?  I would propose that we simply keep

18    the motion pending it be decided.  Why do I have to go back and

19    rewrite the motion?

20          THE COURT:  You don't.

21          MR. DOHERTY:  Okay.  Well, that's    see, that

22          THE COURT:  There's nothing in the order that would

23    make you rewrite the motion.

24          MR. DOHERTY:  Right.  But according to, I think it's

25    paragraph 4, the setup is there's the omnibus motion, and then

1    each defendant who has a particular issue writes the ten pager.

2    What I'm suggesting is

3              THE COURT:  What's the grounds for moving to dismiss?

4              MR. DOHERTY:  Well, it's actually multiple grounds.

5    One is a lack of standing, because if you look at the    it's

6    very interesting.  If you look at the plaintiff in the

7    different cases, sometimes it's RFC.  Sometimes it's the

8    Liquidating Trust.  Cases filed before December 16th, on or

9    before December 16th, the proper plaintiff is RFC.  The plan's

10   effective date is December 17th.  They can see that in the

11   complaint.  They filed against my client    RFC filed against

12   my client on the 17th.  The Liquidating Trust was the proper

13   plaintiff on that day.

14             Case law in the Southern District is absolutely clear.

15   That is an incurable defect.  The case has to be dismissed.

16   That's the primary basis of the motion.  We also have a statute

17   of limitations defense and related defenses.

18             THE COURT:  It's an incurable defect?  They can't

19             MR. DOHERTY:   It is an incurable    yes.

20             THE COURT:  They can't amend

21             MR. DOHERTY:  No.

22             THE COURT:     to name the Trust as the plaintiff?

23             MR. DOHERTY:  No.  Case law is absolutely clear on

24   that.

25             THE COURT:  All right.  We'll see.

1          MR. DOHERTY:  Absolutely clear.

2          THE COURT:  I don't want to

3          MR. DOHERTY:  I know.

4          THE COURT:  I don't want to hear your motion today.

5          MR. DOHERTY:  I understand.

6          THE COURT:  Okay.

7          MR. DOHERTY:  But

8          THE COURT:  This is the case management order.

9          MR. DOHERTY:  Exactly.

10         THE COURT:  It's going to apply to your case.

11         MR. DOHERTY:  Understood.  I guess the third thing is

12    we have pursuant    the district court ordered, right at the

13    beginning of the case in December, ordered plaintiff and

14    defendant to submit a proposed case management order.  Which we

15    did.  Which we have, which we've agreed to.

16         THE COURT:  It isn't happening.  It's this

17         MR. DOHERTY:  No, I understand.

18         THE COURT:  My court.  My case.  My case management

19    order.

20         MR. DOHERTY:  No, I understand.

21         THE COURT:  I have respect for Judge Abrams.  It isn't

22    her order that's going to apply.

23         MR. DOHERTY:  But

24         THE COURT:  I am trying to basically coordinate

25    sixteen, about to be seventeen, cases

1          MR. DOHERTY:  No.  I

2          THE COURT:     in this court.

3          MR. DOHERTY:  And that I understand.  But I just want

4    to make the point that up until roughly seven business

5          THE COURT:  What mileage are you getting out of making

6    the point that Judge Abrams had proposed a case management

7    order?

8          MR. DOHERTY:  I just want    I'm going to compare and

9    contrast, just for a moment.  As of

10          THE COURT:  I don't want to hear it.

11          MR. DOHERTY:  As of

12          THE COURT:  I don't.

13          MR. DOHERTY:  Okay.

14          THE COURT:  Look, I am managing the cases on my

15    docket.

16          MR. DOHERTY:  Right.

17          THE COURT:  By tomorrow or the day after your case

18    will be one of the cases on my docket.  The cases are going to

19    be following a parallel track, okay?  That's why I'm entering a

20    case management order that applies to all of them.

21          MR. DOHERTY:  Right.

22          THE COURT:  Okay?

23          MR. DOHERTY:  My final comment, and the reason I

24    mentioned it is because up until roughly ten days ago I was in

25    the district court.  There was a stay of discovery.  And all

 1  and I'm going to    I'm just going to, you know, again

 2          THE COURT:  This is falling on deaf ears.  I don't

 3  stay discovery pending motions to dismiss.

 4          MR. DOHERTY:  No, no, no.  I understand.  No, I

 5  understand.

 6          THE COURT:  This is going to be the case management

 7  order.  It's going to apply as soon as your case hits the

 8  docket.  I'm going to enter an order in your case making this

 9  case management order applicable to your case.  If you're not

10  happy with it I'm sorry, but that's the way it goes.

11          MR. DOHERTY:  Okay.  What about the issue in terms of

12  the amendment as of right?

13          THE COURT:  I don't have any issue before me at the

14  present time.

15          MR. DOHERTY:  Okay.

16          THE COURT:  Mr. Nesser, are you proposing to

17          I'm not so sure about this issue as to whether you

18  absolutely can't amend to name the Trust as the plaintiff, but

19  we'll have to deal with that when the time comes.

20          MR. NESSER:  Your Honor, the case management order, as

21  we drafted    the proposed case management order, as we drafted

22  it and as it's been submitted to Your Honor without objection

23  from any party, as far as I

24          THE COURT:  Well

25          MR. NESSER:    as far as I understand

```
 1            THE COURT:  It's objected to now.

 2            MR. NESSER:    in this respect provides that we are

 3   permitted to file amended complaints in all of the actions, and

 4   that would include SunTrust.  And we think that makes sense

 5   because

 6            THE COURT:  Look, I'm going to cut this short, because

 7   whether the amendment    whether you amend    whether the

 8   amendment works or it doesn't, if you came to me next week, if

 9   that paragraph wasn't in there, and you asked this early in the

10   case for leave to amend, I would grant it, okay?  Nobody's

11   prejudiced by anything.  You think SunTrust is prejudiced?

12   I'll hear about it.  You'll move to dismiss the amended

13   complaint because it couldn't be filed.  But I'm not changing

14   this paragraph.  You'll decide what you're going to do, Mr.

15   Nesser, okay?

16            MR. DOHERTY:  Thank you.

17            THE COURT:  This paragraph is remaining.

18            MR. NESSER:  Thank you, Your Honor.

19            THE COURT:  Anybody else wish to be heard?

20            Mr. Levy?

21            MR. LEVY:  I want to raise just one very small

22   housekeeping matter.  In paragraph 2 of the docket, something I

23   didn't notice until I

24            THE COURT:  Of the docket or of the draft?

25            MR. LEVY:  Excuse me.  Of the proposed order.
```

1          THE COURT:  Yes.

2          MR. LEVY:  Something I didn't notice until Your Honor

3    was explaining the changes on the lead docket's suggestion.

4          I rise to this point because I'm involved in the

5    Madoff case where there are thousands of actions in front of

6    Judge Bernstein, and he's created a requirement for a single

7    docket filing.

8          As I read the order, it says any filing affecting two

9    or more of the captioned adversaries shall be filed in the

10   original docket and in the master docket.  If it's not involved

11   in the individual case it doesn't get filed on the master

12   docket.  Is that Your Honor's intention?

13         THE COURT:  Wait, wait, wait.

14         MR. LEVY:  Because if that's the case

15         THE COURT:  If it involves two or more then the only

16   place you have to file it is in this central docket.  There's

17   going to be a link, okay?  I checked.  I went over this with

18   the clerk to make sure it was going to    you have to list both

19   captions on the pleading.

20         MR. LEVY:  Because my suggestion, Your Honor, was

21   going to be that what Judge Bernstein does and what Judge

22   Rakoff did in the district court is every filing in every

23   affected adversary proceeding, whether it was one    affecting

24   one or several adversary proceedings    was filed in the master

25   case, so everybody got immediate notice of what was happening

1  in all the other proceedings.

2           THE COURT:  This is what's going to be, Mr. Levy.

3           MR. NESSER:  Thank you, Your Honor.

4           THE COURT:  Anybody else want to be heard?

5           So, Mr. Nesser, I'm going to stick with the fourteen

6  on the sampling, fourteen-fourteen-fourteen.  I'm uneasy, okay?

7  I'm uneasy about it.  And I said that, I think, even before we

8  started, when I said I did this fourteen-fourteen-fourteen.

9           I don't want to go through an empty exercise.  I'm

10 concerned that you're not going to be able to provide each

11 defendant whom you propose sampling with enough information

12 that the defendant, in consultation with its own expert, is

13 going to be able to give you an intelligent response.  And I

14 don't want to rope-a-dope, you know, we need every piece of

15 paper that ever existed with respect to every loan.  But I'm

16 concerned, okay?  And I don't want    you really think you're

17 going to be able to carry this off?

18          MR. NESSER:  We do, Your Honor.

19          THE COURT:  We'll see.

20          MR. NESSER:  We will, Your Honor.

21          THE COURT:  Just bear with me.

22     (Pause)

23          THE COURT:  Well, I'm thinking this order's going to

24 be entered tomorrow.  Forty-two days from tomorrow is August

25 27th.  Tuesday August 26th is a ResCap omnibus hearing date.

1           I'm going to schedule a case management scheduling

2     conference for 11 a.m. on August 26th with respect to these

3     adversary proceedings, principally to discuss sampling.  If

4     there are other issues that have to come up they will, but I

5     want to see where you are.  It's the day before the deadline

6     for, you know, it's forty-one days in, and it is an omnibus

7     day.

8           By the way, I'm also scheduling a case management

9     conference for October 14th at 10 a.m.  What I try to do is try

10    and stay on top of cases and monitor what issues are coming up

11    along the way, hence the October 14th date, but we'll have a

12    conference at 11 o'clock.  The ResCap omnibus is at 10, and I

13    don't know what's going to be on that or not, but we'll set

14    this for 11 o'clock.  Hopefully you won't have to wait very

15    long.

16          On August 26th sampling methodologies is front and

17    center.  If there are other issues people want to raise I guess

18    what I would ask is that by 5 p.m. Wednesday, August 20th send

19    me a status letter that includes any issues that any of the

20    counsel propose for discussion on August 26th.  Any of the

21    defendants' counsel who have an issue they want raised, give it

22    to Mr. Nesser.  Let me get a single letter.  He doesn't have to

23    elaborate, but just so I know what items are going to be

24    discussed.  So let Mr. Nesser know what, if anything, you want

25    discussed.

1          Okay.  I mean, I don't think I've heard anything from

2    any of the counsel today objecting to what I'm proposing that I

3    wasn't concerned about before with respect to sampling.  But if

4    you want to move this along with this proposed speed you and

5    your colleagues have a lot of work to do.  I'm willing to move

6    it quickly, and I want to move it quickly, but the defendants

7    are entitled to a fair opportunity to either argue no sample,

8    or that the methodology proposed is inappropriate, or they

9    haven't given us enough information to be able to respond to

10   it.  Okay.

11          MR. NESSER:  Yes, Your Honor.

12          THE COURT:  Okay.  Anything else anybody else wants to

13          All right.  So this order should be entered tomorrow.

14   I think I've covered whatever changes I made.  And it is my

15   intention to e-mail a copy to the judges in Minnesota.  I hope

16   I'm not offending any of them by putting this schedule

17   together.  If it was one or two judges I would have just picked

18   up the phone and see if we could work it out, but there's just

19   too many to try and do it.  But I want to make clear if I hear

20   back they think some different schedule should apply I may be

21   persuaded, and we may wind up altering it.  I don't think it'll

22   be shortened, but it could be that things would get lengthened.

23          Mr. Levy, is there something else you wanted to add?

24          MR. LEVY:  Yes, Your Honor.  I just wanted to say I

25   understand the Court's going to enter the case management

1   order.  I want to make clear, on behalf of my clients, that we

2   think we're different.  We're entitled to a separate trial.  We

3   believe we should be treated separately.

4        THE COURT:  Who's talking about trial?

5        MR. LEVY:  Excuse me.  Separate   we believe we're

6   entitled to proceedings that are separate to us.  I'm simply

7   stating it for the record on behalf of my clients.

8        THE COURT:  Okay.  You've made your point.  Anybody

9   else want to be heard?

10       Okay.  Thank you very much.  And I really do

11  appreciate the effort that went into getting this to the point

12  where it is.

13       (Whereupon these proceedings were concluded at 3:26 PM)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                      C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7                  *Sharona Shapiro*

8

9    _____

10   SHARONA SHAPIRO

11   AAERT Certified Electronic Transcriber CET**D-492

12

13   eScribers

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16

17   Date:  July 16, 2014

18

19

20

21

22

23

24

25